Harry T. Nttsbaum, J.
The Appellate Term in the ease of Family Finance Gory. v. Lyons (62 Mise 2d 985) passed upon an issue which on its face appears to be on all fours with the case at bar. There, as here, the suit was brought to recover the unpaid balance due on a renewal note which was executed by the defendant in order to obtain additional cash. There, as here, the defendant executed a financial statement which is concededly false, in that it does not list all her debts and there as in the case at bar the defendant filed a petition in bankruptcy in which she listed the plaintiff as a debtor. The defendant has since received her discharge in bankruptcy and affirmatively pleads that discharge as a defense to this action.
In the Lyons case the Appellate Term differed with the lower court which granted the plaintiff a judgment for only the amount advanced on the last renewal note on the ground that the granting of any judgment necessitated a finding that the plaintiff was in fact induced to renew the note and part with additional cash by the admittedly false financial statement made by the defendant. I find that the facts adduced at the trial in the case at bar do not permit such a finding.
The defendant borrowed $708.25 from the plaintiff in August of 1966 which was to be repaid in 24 monthly installments. This loan was renewed on March 16, 1967, renewed and raised to $751.16 on June 23, 1967, renewed and raised to $800 on November 11,1967, renewed for $800 on March 12,1968, renewed for $800 on July 11,1968, renewed for $800 on October 11, 1968, and renewed for $800 for the last time on January 17, 1969. The last renewal resulted in the plaintiff receiving the net sum of $74.97. It is conceded that during all this time, September 14, 1966 to just prior to May 14, 1969, the date the petition in bankruptcy was filed, the defendant made prompt payments of approximately $40 per month in reduction of her loan and was in every way an exemplary client. Nevertheless, and despite all the payments made by the defendant, which I approx *76 imate to be in excess of $1,100, her present indebtedness to the plaintiff is still $834.11, the amount sued for herein. This seemingly impossible arithmetic result is actually achieved quite simply. Each time the note was renewed, fresh interest in the amount of approximately $160 less credit for prepaid interest was added and life and accident insurance fees in excess of $30 were deducted and collected. It was, in every way, a profitable account for this plaintiff.
To effect a recovery, the plaintiff must establish by a fair preponderance of the evidence that the debt is not dischargeable (United States v. Syros, 254 F. Supp. 195) and comes within the exceptions set forth in section 17 (subd. [a], par. [2]) of the Bankruptcy Act (U. S. Code, tit. 11, § 35, subd. [a], par. [2]) which excludes from the effect of a discharge in bankruptcy ‘ ‘ liabilities * * * for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published * * * with intent to deceive ”. These exceptions are to be strictly construed (Gleason v. Thaw, 236 U. S. 558) and must be liberally construed in favor of the bankrupt (Zerega Distr. Co. v. Gough, 52 Wn. 2d 443). As the court stated in United States v. Syros (supra, p. 198): “ The cases applying § 35(a)(2) have consistently held that it contemplates actual fraud; that the bankrupt knowingly made false representations, that such representations were made with the intent of defrauding the creditor, or were made with such reckless disregard for the truth as to be tantamount to a willfull misrepresentation, and that the creditor relied upon and was misled by the false pretense or representation.”
It is the plaintiff’s burden, therefore, to establish in addition to the falsity of the statement and the fact that she knew it to be false when made, (1) that the statement was made with the intent and purpose of deceiving the creditor, (2) that the creditor relied upon such representations, and (3) that the creditor sustained the alleged loss as a direct result of the statement being made (Sweet v. Ritter Finance Co., 263 F. Supp. 540, 543). As the trier of the facts, I find that the plaintiff has failed to sustain that burden.
A financial statement made by a businessman in quest of a business loan is vastly different from the routine request for a listing of outstanding debts made by small loan companies and must be treated differently. The 1960 amendment to section 32 (subd. [c], par. [3]) of title 11 of the United States Code which makes its provisions inapplicable to nonbusiness bankrupts, is a recognition of that difference. The small borrower is usually *77 unaware of the consequences that might follow his failure to list all his creditors and is certainly unaware that under certain circumstances such failure could result in the contracted debt remaining as a yoke around his neck for the rest of his life, (Feliciana Finance Co. v. Bateman 194 So. 2d 781 [La.]).
I find that the defendant’s financial statements were not made with intent to deceive or defraud the plaintiff. Further, I find that the plaintiff did not rely upon those statements in making the renewal loan sued upon herein and that the loss sustained is not a direct result of the statement being made. One of the early statements made by this defendant on June 23, 1967 lists debts of $1,714.29. The last statement executed on January 17,1969 in connection with the execution of the renewal note sued upon herein shows debts of $3,146.22. This increase in indebtedness, coupled with the increased frequency of the renewals, was more than enough to put the plaintiff on notice of the defendant’s increasing financial difficulties. I observed the defendant on the stand, and I believe the story she tells of the instructions she received with respect to the preparation of the financial statements. She listed thereon only debts due to other finance companies and no other finance companies are listed in the bankruptcy schedule, which shows debts of $6,147 including many personal loans.
In my opinion, as far as this borrower was concerned, the renewal loan was made on the basis of her past record of payments and not because of the routine financial statements she was required to fill out with each renewal of the loan.
Judgment for the defendant dismissing the complaint.