DIXON, Judge.
The only question presented for decision on this appeal is whether an award for personal injuries should be increased.
Plaintiff, a forty-nine year old salesman, was seriously injured in an intersectional collision when he was struck by a police car. He suffered a displaced vertebra in the neck and fractures of facial bones, as well as other less serious, but related, injuries.
Plaintiff complains in his appeal that the trial judge did not grant enough to compensate him for his loss of earnings, and refused to award him anything for the emotional disability which he contends was caused by the accident.
The trial court in its opinion considered the evidence adduced concerning the loss of earnings. The plaintiff had been working at the job he held at the time of the accident for only a short period. He had not reached his maximum rate of earnings, but, the trial court considered that the evidence was not sufficient to substantiate all the plaintiff claimed for loss of earnings prior to the trial. The court awarded $7,000 for this loss; the plaintiff on appeal contends that this amount should be increased by $3,450. We cannot say, from the evidence before us, that the trial judge committed error in this particular, and therefore we will not disturb the award for loss of earnings.
However, we are convinced that the trial judge committed error when he refused to make any award for the emotional problems suffered by the plaintiff after the accident. In his opinion, the trial judge stated, “I am not convinced that his emotional problem is a consequence of this accident.”
Since a substantial sum was awarded by the trial court for -the injuries received by the plaintiff, a description of those injuries in some detail will be relevant.
Plaintiff was hospitalized immediately after the accident, and has only a vague recollection of what occurred for the next few days. He was placed in traction to relieve the pain in his neck, with a strap that went beneath his chin. However, a neurosurgeon who was called in changed the method of traction because of the pressure exerted on the facial fractures. The neurosurgeon inserted “Crutchfield tongs” in holes drilled in the plaintiff’s *30 skull, from which were suspended the weights for the traction device. On February 27 the neurosurgeon performed surgery to excise the damaged inter-vertebral disc in the cervical area, removed some bone from the plaintiff’s hip, and with the bone fused the vertebrae. The plaintiff remained in traction during and after the operation.
On March 7 another surgeon undertook to reduce the fractures of the bones in plaintiff’s face under local anesthesia. This operative procedure was accompanied by a considerable amount of pain, but temporarily improved the plaintiff’s ability to open his mouth. Plaintiff was allowed to go home on March 9 after twenty days in the hospital. He was in bed for much of the time at home but he wore a neck brace instead of a traction device. This gave him some mobility; when he was in traction with the Crutchfield tongs, plaintiff was unable to move in his bed for any purpose. By April IS plaintiff’s injuries resulted in further restriction of his ability to open his mouth. He found it difficult to eat and suffered severe pains in his face. He was referred to another surgeon who found abnormalities that impaired the plaintiff’s mandibular function. On June 14 plaintiff underwent further surgery on his facial bones, which required incisions through the mouth and otherwise, and refracture of some of the breaks, with a reduction in the fractures followed by wiring the fragments in place.
After this surgery the plaintiff began to suffer an unusual amount of pain and became depressed. A psychiatrist, called in by the surgeon, found the plaintiff in a seriously depressed condition and prescribed drugs and an additional two weeks hospitalization before the plaintiff’s depression was improved from “severe” to “moderate.” The psychiatrist was afraid that plaintiff would have become suicidal in the absence of treatment for his depression.
During this entire period the plaintiff was also examined on occasion by the neurosurgeon who had performed the operation on the cervical vertebra. The testimony of the surgeon corroborated that of the psychiatrist. There was no doubt of the reality of the severe pain suffered by the plaintiff over a long period of time. Plaintiff can expect future surgery to correct a drooping eyelid. The severe trauma, debilitating the plaintiff physically and mentally, was a definite cause of the plaintiff’s-depression, ■ according to the psychiatrist. There was no prior history of emotional problems or psychiatric illness of the plaintiff before the injury. The plaintiff’s complaints of headaches and vertigo were consistent with the post concussion syndrome found by the psychiatrist.
The physical disability of the plaintiff was estimated by the neurosurgeon to be approximately fifteen to twenty per cent of the body as a whole. While this disability is severe and probably permanent, it does not seem to be as serious as the mental and emotional damage suffered by the plaintiff. The psychiatric testimony was that the plaintiff has improved to a state of moderate depression “so that he can live at home and he functions at about fifty percent ability in terms of life, home and work.” No improvement was noted in the plaintiff for the few months prior to trial.
Contrary to the finding of the district court, the evidence in this record is convincing that the plaintiff’s emotional and mental disabilities were caused by the accident. The failure to make an award for this claim of damages is error, and the award will therefore be increased by the sum of $10,000.
There is now judgment in favor of the plaintiff, Leon L. Duncan, and against the defendants, the City of Shreveport and William Bolyston Dye, in solido, for the full sum of $56,729.42 with legal interest thereon from date of demand until paid, and, as thus amended, the judgment appealed from is affirmed, at the cost of defendants.