Allen Murray Myers, J.
Plaintiff, a small-loan company, is suing the defendant, a loan customer since 1962, to recover the sum of $1,775.19, the balance due on a note in the face amount of $1,878.48 made and delivered by the defendant to plaintiff on July 11, 1969 to obtain a renewal loan plus $517.57 in cash.
In his answer to this action the defendant pleads that he was adjudicated a bankrupt on November 5, 1969.
It is elemetary that being adjudicated a bankrupt does not effect the discharge of one’s debts. Any indebted person who files a voluntary petition in bankruptcy is automatically adjudicated a bankrupt (Bankruptcy Act, § 18, subd. [f]; U. S. Code, tit. 11, § 41, subd. [f]), and any person against whom an involuntary petition in bankruptcy is filed can either consent to adjudication or oppose it. If opposed, a debtor may be adjudicated after a trial. Adjudication then subjects the debtor to the jurisdiction of the Bankruptcy Court and to the provisions of the Bankruptcy Act in the marshalling and distribution of his assets. Unless a bankrupt has been granted a discharge (the Bankruptcy Act, § 1, subd. [15]; U. S. Code, tit. 11, ■§ 1, subd. [15] defines discharge as “ the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this title ”), he remains liable for all of his debts and obligations.
It is apparent that we are dealing here with a most unsophisticated debtor, a small wage earner, to whom borrowing to make ends meet is a necessary way of life. Paying an interest rate which ranged from 9% to 30%, he finally reached a point where he was being strangled financially, and he had to seek the benefit of a discharge in bankruptcy. Although his attorney succeeded in (Obtaining the discharge for him, he then failed to correctly plead the discharge in this action.
Since it was stipulated at the trial that the defendant was granted a discharge in bankruptcy on January 27, 1970, in a proceeding in which this plaintiff was duly listed as a creditor in the bankruptcy schedules, the court on its own motion does hereby amend the answer to conform to the proof and deems the defense of discharge to have been pleaded (CPLB 3025, subd. [c]; Dittmar Explosives v. A. E. Ottaviano, Inc., 20 N Y 2d 498; Westchester County v. Westchester County Federation of Labor, 129 N. Y. S. 2d 211, 216; 3 Weinstein-Korn *346 Miller, par. 3025.27; Pogor v. Cue Taxi Serv., 43 Misc 2d 487, affd. 45 Misc 2d 933).
Plaintiff contends that its claim against the defendant was not subject to the discharge because the defendant had fraudulently procured the loan by giving a false financial statement, upon which it relied, citing paragraph (2) of subdivision (a) of section 17 of the Bankruptcy Act (U. 'S. Code, tit. 11, § 35, subd. [a], par. [2]). This section excludes from the effect of a discharge in bankruptcy ‘ ‘ liabilities * * * for obtaining money or porperty on credit, or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting [the bankrupt’s] financial condition * * * with intent to deceive” (italics supplied).
The question of whether a particular debt is subject to a discharge in bankruptcy is normally for the court in which the suit is brought to decide (1 Collier, Bankruptcy Manual, § 17.10). The court, in determining the issue, is guided by the rule that “ the Bankruptcy Act must be construed strictly against the objecting creditor and liberally in favor of the bankrupt ” (see Matter of Zidoff, 309 F. 2d 417, 419).
Once a person has received a valid discharge in bankruptcy, he has a prima facie defense against all debts, and the burden of proof is then on the creditor to show that the debt is nondischargeable. (United States v. Syros, 254 F. Supp. 195.)
Not only does Family Finance have the burden of proof, but it is also faced with the rule that all exceptions set forth in paragraph (2) of subdivision (a) of section 17 are to be strictly construed (Gleason, v. Thaw, 236 U. S. 558). It must prove actual fraud before it can show its claim to be nondischargeable under paragraph (2) of subdivision (a) of section 17 of the Bankruptcy Act (United States v. Syros, supra, p. 198).
At the trial the parties stipulated that the loan application was false in that it omitted two outstanding debts to the First National City Bank in the respective amounts of $1,469 and $660. However, I find that plaintiff failed to sustain its burden of proof that the false statement was made with the intent to defraud (Johnson v. Bockman, 282 F. 2d 544), that the plaintiff relied upon it in refinancing plaintiff’s prior loan, and that its loss was proximately caused by the falsity of defendant’s statement.
Defendant testified that, when he was filling out the application form, plaintiff’s manager told him that it was not necessary to list all of his outstanding debts, because he was an old customer with a good record and that his credit was good. Although plaintiff’s manager denied making this statement, I *347 believe the defendant’s version of the transaction and find that the loan was refinanced on the basis of the past dealings between the parties and not the statement given for this particular renewal loan. (Family Finance Corp. v. Hodges, 63 Misc 2d 74; Excel Finance Baronne v. Dobbs, 146 So. 2d 203 [La]; Household Finance Corp. v. Groscost, 230 F. 2d 608.)
To deny a debtor his right to a discharge of his debts in bankruptcy is not to be undertaken lightly. Our founding fathers thought that right to be so important that they made provision for it in the Federal Constitution (art. I, § 8, subd. 4).
Prior to 1960 a situation developed where some small loan companies embarked on a course of conduct which resulted in the inability of their small loan customers to ever obtain a discharge. As a result, Congress amended paragraph (3) of subdivision (c) of section 32 (Bankruptcy Act, § 14, subd. [c], par. [3]) to exclude the nonbusiness borrower from its provisions, and the denial of a discharge was limited to the claim of a particular creditor who had actually been defrauded as opposed to the denial of a discharge of all debts in the case of a commercial borrower. The Congressional Committee which proposed the amendment set forth the basis and reason for its proposal as follows: “ ‘ The committee believes that complete denial of a discharge is too severe a penalty in the case of the individual noncommercial bankrupt. It is also a penalty which experience has shown to be subject to abuse. An unscrupulous lender armed with a false financial statement has a powerful weapon with which to intimidate a debtor entering into an agreement in which the creditor agrees not to oppose the discharge in return for the debtor’s agreement to pay the debt in full after discharge. The creditor may also accomplish his purpose of preserving his debt by not opposing the discharge and then suing in a 'State court on the ground that the debt is not dischargeable. Testimony before the Subcommittee on Bankruptcy and Reorganization by experts on bankruptcy law indicates that unscrupulous lenders have frequently condoned, or even encouraged, the issuance of statements omitting debts with the deliberate intention of obtaining a false agreement for use in the event that the borrower subsequently goes into bankruptcy. ’ 1960 U. S. Code Congressional and Administrative News, page 2955.” (Feliciana Finance Co. v. Bateman, 194 So. 2d 781, 784 [La.].)
In spite of this Congressional condemnation, the practice of attempting to deprive the unsuspecting small borrower of his discharge persists and should not be condoned by the courts.
*348 Obviously, if the small loan companies were really interested in knowing about the outstanding loans of its customers, it would be a simple enough matter to record all their small loan transactions with a central credit agency or clearing house where the information would be readily available to all. The use of credit agencies for such purposes is such a common eommerieal practice today that one must question the motive of the small loan companies in failing to avail themselves of this method of protection. In view of the above, plaintiff’s manager’s testimony that First National City Bank would not furnish plaintiff with small loan information and that the company had to rely solely on defendant’s statement is rejected.
Accordingly, I find for the defendant and against the plaintiff. I find that the instant debt was discharged in bankruptcy and is not exempted from the discharge by virtue of any fraud on defendant’s part.
This decision is not in conflict with the decision of the Appellate Term in Family Finance Corp. v. Lyons (62 Misc 2d 985) where the court below apparently found actual fraud upon which plaintiff there did rely, which fraud was the direct result of its loss. The issue before the, Appellate Term, whether the recovery should be limited to the amount of fresh cash advanced, which was decided in the negative, is not at issue here.
Judgment may therefore be entered in favor of defendant dismissing the complaint.