497 P.2d 17

**PEOPLES FINANCE AND THRIFT COM-
PANY OF OGDEN, a Utah corpora-
tion, Plaintiff and Appellant,**

v.

**Michael DOMAN and Sheryl Doman,
Defendants and Respondents.**

**No. 12432.**

Supreme Court of Utah.

May 12, 1972.

W. Brent Wilcox, of Draper, Sandack & Saperstein, Salt Lake City, for appellant.

L. Kent Bachman, of Bachman & Sampson, Ogden, for respondents.

CROCKETT, Justice:

Peoples Finance and Thrift Company of Ogden sued Michael David Doman and his wife Sheryl for $2047.76 due on a promissory note, and for attorney's fees. Defendants did not dispute the debt, but pleaded a discharge in bankruptcy. Opposing this the plaintiff asserted that the debt was one of those excepted from discharge in Section 17 of the Bankruptcy Act which provides that:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except . . .

\* \* \* \* \* \*

. . . (2) . . . liabilities for obtaining money . . . by false pre-

tenses or false representations . . . or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition . . . with intent to deceive, or for willful and malicious conversion of the property of another . . . .

Upon a plenary trial, the court found that Mr. Doman had made misrepresentations, but rejected plaintiff's contention that the debt was not discharged because of the above quoted section. This was based on an affirmative finding that in making the loan the plaintiff did not rely on the false statement made by defendant. Plaintiff appeals contending that under the evidence the trial court was compelled to make the finding in its favor and to determine that the debt was not discharged.

The defendants had an existing loan from the plaintiff upon which there was a balance of $1400+. In February 1969 they went to the company office to obtain some more money. This was done by allowing them a new loan sufficient to pay off the old balance of $1412.41, plus $478.-25 additional. Defendant was required to fill out a loan application. On the reverse side were questions concerning his financial condition. He gave answers which were filled in by Mr. Gene Fessler, who was handling the matter for the plaintiff. Dr. Doman reported some of his debts, but failed to report some others; and also failed to state that a substantial amount of his security was already pledged. It also appears: that Mr. Doman had previous acquaintance with Mr. Fessler; that Doman had gone to him on other occasions for financial advice; that the latter knew that he was in financial difficulties and that he had other debts large and small.

■ On the problem here involved it is appropriate to make some observations about Section 17 of the Bankruptcy Act and the exception from discharge relied upon by the plaintiff. From the language above quoted it is clear that all provable debts are prima facie discharged. It follows that if the creditor claims his debt is an exception he has the burden of so proving. There are eight subsections providing exceptions, such as taxes, alimony and support money, and included are three subsections which deal with liabilities arising out of the wrongdoing of a debtor: for obtaining money by false pretenses or false representations (subsection 2) relied upon by the plaintiff; fraud or embezzlement by a fiduciary (subsection 4); and malicious injuries to person or property (subsection 8).

■ It will be observed that as to each of the exceptions there appears to be some underlying reason why the class of debts so excepted should be regarded as of a different character than an ordinary debt or obligation incurred in the usual course of

business. The exception involved in this case is of the same general character of liabilities as subsections 4 and 8 just referred to, all of which arise out of wrongful conduct of the debtor. The reasonable interpretation and application of the provisions for those exceptions is that the liability must arise essentially out of the wrongdoing, and not be one in which wrongdoing may be merely incidentally involved.[1] In harmony with this, the well-recognized rule is that in order that a debt not be dischargeable under subsection 2 relating to false representations, the money must have been obtained by a material representation which was wilfully made by the debtor, knowing it to be false, and when the creditor did not know of its falsity, and reasonably relied thereon, in parting with his money.[2]

The plaintiff's contention that the trial court erred in not finding that the debt had been incurred through misrepresentation does not present the question usually involved on an appeal which challenges the findings of the trial court: that is, whether

there is substantial evidence to support the findings. Here the situation is reversed: the burden of proving the contention was upon the plaintiff. When we are asked to rule that the evidence compels a finding, we would do so only if all reasonable minds would so find. On the other hand, if the evidence and any reasonable inferences that fairly can be drawn therefrom, viewed in the light favorable to the trial court's ruling, is such that reasonable minds acting fairly thereon could remain unpersuaded that the plaintiff's claim against the defendant was essentially one arising out of obtaining money by false representations upon which the plaintiff reasonably relied, then we will not reverse the trial court and compel such a finding.

■ In considering the problem just stated, we are obliged to have in mind this proposition: the mere fact that there is some evidence of false representation by the defendant in failing to make a full disclosure as to his debts, coupled with the plaintiff's own assertion that it relied there-

1. Before statutory exemption from discharge in bankruptcy on ground that money or property had been obtained by false representations can be applicable, creditor must show that debtor made false representations with intention of defrauding creditor and that creditor relied upon and was misled by them. Seaboard Finance Corp. v. Stipelcovich, 176 So. 2d 170 (La.App.1965); Excel Finance Mid City, Inc. v. Chetta, 160 So.2d 304 (La.App.1964).

2. To show that defendant's liability was not discharged in bankruptcy by reason of false financial statement, plaintiff must show that loan extension or renewal was granted in reliance upon written financial statement made or caused to be made by defendant, that statement was materially false, and that statement was made or caused to be made by defendant with intent to deceive. Midland Discount Co. v. Robichaux, 184 So.2d 93 (La.App.1966); Family Finance Corp. v. Hodges, 63 Misc. 2d 74, 311 N.Y.S.2d 222 (1970).

on in making the loan, would not necessarily compel the trial court to make the finding demanded by plaintiff. The difficulty in its position is its assumption that the trial court was bound to believe and find in accordance with its evidence. But the well-established rule is that the trial court is the exclusive judge of the credibility of the witnesses, and is not obliged to believe testimony in which there is any inherent frailty; and this includes the self-interest of the witness.[3] It is the duty and the prerogative of the trial court to make that determination from the evidence; and that is sufficient justification for sustaining the judgment. However, there are other aspects of the evidence which the court may have viewed as tending to give it further support. On the basis of information furnished to Mr. Fessler, it appears that the payments to which the Domans were already obligated would leave a very restricted family budget, with only $43.50 a month remaining uncommitted.

In view of the total circumstances shown, including Mr. Fessler's knowledge of the Domans' financial affairs, we are not persuaded that the trial court acted unreasonably in failing to adopt plaintiff's point of view that its cause of action was in essence one to recover money it had been cheated out of by defendant's wrong-doing, nor in its refusal to find that the plaintiff did not know of the falsity of the representations and relied upon them in granting the loan. Accordingly, there is no basis upon which to upset the trial court's findings and judgment.

Affirmed. Costs to defendants (respondents).

TUCKETT, HENRIOD and ELLETT, JJ., concur.

CALLISTER, Chief Justice (concurring in the result):

The trial court found that Michael Doman on February 4, 1969, submitted a false financial statement for the purpose of inducing plaintiff to make a loan; that defendant knew that his financial statement materially and substantially misrepresented his financial condition and was made with the intent to deceive plaintiff, to wit: he did not list the following debts: Zions First National Bank, $1376.06; Thomas Dee Memorial Hospital, $604.12; Bloch's Clothing Store, $193.44; and miscellaneous accounts; and he did not disclose that a substantial amount of the security he offered to plaintiff was already pledged to other creditors.

The foregoing findings were supported by substantial competent evidence in the record.

3. Diaz et al. v. Industrial Commission of Utah et al., 80 Utah 77, 13 P.2d 307 (1932); Page v. Federal Security Insurance Co., 8 Utah 2d 226, 332 P.2d 666 (1958).

The trial court further found that the plaintiff, through its agent and employee, Gene Fessler, did not rely upon the fraudulent and false financial statement, by reason of a budget analysis, which was unrealistic in that a loan such as that granted plaintiff would not have been requested by defendant unless his financial problems were severe; that the loan was made by Mr. Fessler in order to increase his loan volume; and that the financial statement was made merely as a personal defense of his actions to the plaintiff and as an answer in case of defendant's future bankruptcy; and that plaintiff knew that numerous small and large debts would be existing.

The facts recited to support the conclusion that plaintiff did not rely on defendant's false financial statement are not revealed by the evidence adduced at the trial. The finding that the loan was made to increase Mr. Fessler's loan volume and the recited motives for the financial statement were not supported by a scintilla of evidence in the record and appear to be a gratuity for the purpose of bolstering the conclusion that there was no reliance. The court further found that the budget analysis was unrealistic by reason that plaintiff would not have requested the loan unless his financial problems were severe. This finding does not comport with the facts as testified by defendant Michael Doman.

Michael testified that he owed an indebtedness to American Finance in the sum of $478.25; that he had remained current in his payments; that American Finance, by bookkeeping errors, had notified him that he was in default; that when he had conferred with the manager about the errors the manager was rude; that Michael went to plaintiff and requested an additional loan, in order to discharge his obligation with American because he wished to terminate his business relationships with that organization; that through consolidating his loan with plaintiff he actually reduced his monthly payments, i. e., previously, he had owed plaintiff monthly payments of $56.36; the consolidated loan increased the payments to $70.66; but his payments to American Finance had been $21 a month, thus his monthly payment actually decreased by $7.

Plaintiff, however, urges that it is not only entitled to have the finding of "no reliance" set aside as a matter of law, but that it is entitled to have judgment entered against Michael Doman. To prevail, plaintiff must sustain its burden of proving the elements of fraud by clear and convincing evidence. The elimination of the factors cited by the trial court to support the conclusion that plaintiff did not rely on the false financial statement does not, however, mean that plaintiff has sustained its affirmative burden of proof.

The organization for which Mr. Fessler had previously worked had been recently acquired by plaintiff at the time of the instant transaction. Plaintiff had a policy that a debtor must fill out a financial statement each time a renewal loan or an additional advancement was granted. Over the approximately five-year period in which Mr. Fessler had made loans to defendant, he had never previously required a financial statement. Mr. Fessler was well acquainted with defendant and noted on the security analysis data sheet of plaintiff that Michael Doman had been an excellent account and that he had been doing business for over five years. Although Mr. Fessler testified that he had relied on the financial statement in increasing defendant's loan, there is considerable evidence in the record to support the inference that the loan was, in fact, granted by reason of Mr. Fessler's long-standing business relationship with defendant.[1] The financial statement emerges as more a formality than as a means of misleading plaintiff's agent. There is no basis to hold that plaintiff has proven by clear and convincing evidence that plaintiff relied upon the financial statement in granting the consolidation loan.

1. See Family Finance Corp. v. Hodges, 63 Misc.2d 74, 311 N.Y.S.2d 222, 225 (1970), wherein the court concluded that a renewal loan was made on the basis of the borrower's past record of payments and not because of the routine financial statements she was required to fill out with each renewal. Also see Family

Finance Corp. v. Secchio, 65 Misc.2d 344, 316 N.Y.S.2d 794, 797 (1970); Friendly Finance Service Mid-City Inc. v. Windham, La.App., 240 So.2d 26 (1970); Local 155 UAW Credit Union v. Zalewski, 25 Mich.App. 230, 181 N.W. 2d 288 (1970).