**VALLEY LANE CORPORATION et al., Plaintiffs and Respondents,**

v.

**Charles E. BOWEN and Shirley Bowen, his wife, and Bowens, Inc., a Utah Corporation, Defendants and Appellants.**

No. 15615.

Supreme Court of Utah.

Feb. 16, 1979.

---

John C. Green, of Cotro-Manes, Warr, Fankhauser & Green, Salt Lake City, for defendants and appellants.

Philip C. Pugsley, of Watkins & Campbell, Salt Lake City, for plaintiffs and respondents.

CROCKETT, Chief Justice:

Plaintiff lessor, Valley Lanes Corporation, and its officers brought an unlawful detainer action for possession of a bowling alley, and for rent due from the defendant lessees Bowen, Inc. and its president Charles E. Bowen and secretary-treasurer Shirley Bowen. From a judgment ordering restitution of the premises to the plaintiff and awarding $35,000 against the defendants, jointly and severally, the defendants appeal.

On August 31, 1966, Diamond Developments, Inc., the original owner of a bowling alley in Kearns, Utah and the property on which it was located, leased that facility to Howard C. Nelson and W. Roy Brown. The lease agreement provided for a ten-year term with $1,700 per month rent from September through April (the heavy bowling season) and rent of $725 per month for the remainder of the year; and stated conditions for renewal, as discussed below.

Subsequently, Diamond Development, Inc. sold the property to Manivest Corporation. Later, on August 28, 1973, lessees Nelson and Brown sold their bowling alley business to Bowen, Inc. The agreement by which this was done contained the following covenants pertinent to this controversy: that Bowen, Inc., would "faithfully perform all terms, covenants and conditions of the lease between Manivest Corporation and Nelson and Brown; that the monthly payments would be sent to the latter, who would then pay Manivest; and that defendants Charles E. Bowen and his wife Shirley Bowen would *personally guarantee* performance of the terms and conditions of the agreement.

Two years later, on August 28, 1975, Nelson and Brown and Bowen, Inc. executed another contract whereby, in consideration of Bowen, Inc.'s continued payment under the earlier agreement, and its promise to faithfully perform all the terms and covenants of the original 1966 lease and its agreement to seek a new lease from Manivest Corporation, and to hold Nelson and Brown harmless under the 1966 lease, Nelson and Brown agreed to and did

. . . sell, assign and transfer under Bowen, Inc. all rights, title and interest they have unto said lease.

In April 1976, Manivest Corporation sold the property to the plaintiff, including its interest in the 1966 lease agreement to it.

On April 22, 1976, counsel for Bowen's sent a letter to Manivest Corporation, which was forwarded to the plaintiff, stating Bowen's desire to renew the lease on the bowling alley, pursuant to the following lease provision:

Lessors hereby give and grant to the Lessees the *first right of refusal to renew this lease.* Lessees shall notify the Lessors in writing by registered mail at least ninety (90) days prior to expiration of this lease of Lessees intention to release said premises herein contained, otherwise . . . this lease shall terminate on August 31, 1976.

Counsel for plaintiff responded by letter on May 12, 1976, stating that due to "the change of economic conditions since the date of the original lease," the rent payable under a new lease would be increased to $6,500 per month; and gave the defendants 30 days to accept the terms.[1]

The defendants did not accept the plaintiff's offer, nor did they proceed as provided in the lease to hire an appraiser to determine the fair rental value of the property. The lease states:

Should Lessees desire to release, Lessors shall submit to Lessees a proposed new lease for a ten (10) year term . .. Should the Lessees feel the lease terms unreasonable *then Lessee will hire a competent appraiser* to place a fair market lease value on said property. Should *Lessor* then feel this market value not reasonable, *they will obtain a competent appraiser* to place a fair market value on said property and equipment. Should the two appraisers and Lessee and Lessor fail to arrive at a meeting of the minds, then *the two appraisers will appoint a third appraiser* by mutual agreement, to act as a referee and all parties concerned will be bound by the finding of appraisers as to fair market value. [All emphasis herein added.]

On July 1, 1976, the plaintiff notified the defendants that the offer to re-lease had been withdrawn. Thereafter, the defendants were instructed to vacate the premises on or before August 31. On September 17, the defendants filed an action for specific performance of the lease agreement and an order requiring the plaintiff to proceed in good faith to negotiate a re-lease of the premises. The trial court ordered that the plaintiffs (defendants here) retain possession of the premises during the pendency of that action. Meanwhile, the plaintiffs filed the instant case and, upon proper motion, the two cases were consolidated.

Defendants' argument is that if the provisions of the lease are looked at together, as they should be, there is uncertainty as to whether the intent was to grant the lessees merely a first right of refusal or an option to re-lease. They urge that it should be construed in their favor; that they should have the right to re-lease the property at a reasonable rental; and that they should not lose that right merely because of what they characterize as "unconscionable rent demands" by the lessor.

█ We are unable to agree with the position thus essayed by defendants. It will be seen that the above quoted provisions of the lease state with unmistakable clarity that the lessee is to have a "first right of refusal" to renew the lease; and there is nothing elsewhere in the lease to create doubt or uncertainty about that provision. That provision conferred upon them no right or assurance of a new lease, but constituted only an offer to give them the first opportunity to lease the property at such rental as the lessor would be willing to lease to anyone.[2]

█ Upon a plenary trial to the court, on the basis of competent and credible evidence, it resolved the issues of fact against the contentions of the defendants: that at no time prior to the expiration of the term of the lease did they meet the conditions for negotiating a renewal by following the procedure of obtaining an appraiser. Consequently, the trial court was justified in ruling that, because of their failure to so proceed, the defendants had failed to properly

---

1. The evidence also indicates that part of the rent increase was due to plans to replace some of the equipment in the bowling alley.

2. See *Russel v. Park City Utah Corp.,* Utah, 548 P.2d 889 (1976); *Krochnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970); *University Realty & Devel. Co. v. Omid-Gaf. Inc.,* 18 Ariz. App. 488, 503 P.2d 747 (1973).

exercise their "right of first refusal" under the lease. Moreover, the trial court further indicated that, even if the renewal provision should be construed as an option, the defendants could not demand a renewal, because they had failed to pursue their rights in accordance with the terms agreed upon.[3]

Defendants raise two issues as to the $35,000 damages awarded them: (1) that any such judgment should have been only against the corporation Bowen, Inc.; and (2) that the amount awarded was excessive.

It is so basic as to hardly require stating our agreement with defendants' argument that the corporate entity is separate from themselves as individuals; and that business conducted through it will protect them from personal liability therefor.[4] But it plainly appears that the trial court was under no misapprehension on this point. The difficulty with this protection claimed by defendants Bowen is the express recital in the agreement by which they purchased the bowling business that the defendants Charles E. and his wife Shirley Bowen agree to "personally guarantee performance of all of the terms and conditions of the foregoing agreement."

They claim that this guarantee was only for the benefit of Nelson and Brown. However, the agreement provided that its terms would "apply and bind . . . successors and assigns of the respective parties thereto." Thus, both Manivest and Nelson and Brown were beneficiaries of that guarantee which, by assignment from Manivest, passed to the plaintiff. Therefore, the court properly awarded a personal judgment against the defendants.

Defendants' evidence through an expert witness was that a reasonable monthly rental value of the property for the ten months they were in possession after expiration of the old lease would be $1,800. As opposed to this, the plaintiff's expert testified that with only minor repairs and upkeep, the rental value would be $3,800 per month; and that with more extensive renovation, i. e., if new pin setters and carpeting was installed and the interior of the building was painted, a fair market value on a ten year lease commencing September 1, 1976 would be $5,700 per month.

It is noted that plaintiff's evidence does not cover exactly the rental value of the property as it existed during the ten month period. Nevertheless, the trial court is entitled to consider both the evidence and reasonable inferences to be drawn therefrom. Upon that basis he assessed the reasonable rental value at $3,500 per month. This could reasonably be regarded as falling within the evidence as adduced.

Considering what has been said herein, in the light of the standard rules of review: that it is the prerogative of the trial court to judge the credibility of the evidence, and that we will not disagree with his findings if there is a substantial basis in the evidence to support them,[5] we have found nothing to persuade us that the judgment should be overturned.

Affirmed. Costs to plaintiff.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

3. See 51C C.J.S. Landlord & Tenant § 57; *Lincoln Land & Devel. Co. v. Thompson*, 26 Utah 2d 324, 489 P.2d 426 (1971).

4. *Dockstader v. Walker*, 29 Utah 2d 370, 510 P.2d 526 (1973); *Kelman v. Bohi*, 27 Ariz.App. 24, 550 P.2d 671 (1976); *Hulme v. Springfield Life Ins. Co.*, Okl., 565 P.2d 666 (1977).

5. *De Vas v. Noble*, 13 Utah 2d 133, 369 P.2d 290 (1962); *McCarren v. Merrill*, 15 Utah 2d 179, 389 P.2d 732 (1964); *Peoples Finance & Thrift Co. v. Doman*, 27 Utah 2d 404, 497 P.2d 17 (1972); *Bountiful v. Swift*, Utah, 535 P.2d 1236 (1975).