JOHNSON, Judge.
Plaintiff appeals from a judgment denying recovery of $569.89 for the price of merchandise which defendant purchased from plaintiff.
Defendant purchased the merchandise on open account and very shortly thereafter he was adjudicated a bankrupt on his voluntary petition. On October 2, 1960, defendant called upon plaintiff’s credit manager and told the credit manager that he and his family were getting low on clothes and he wanted to replenish the supply. Defendant did not buy anything that day, but went back on October 4th, made formal application for credit to be paid on installments of $29.90 per month, and the credit manager approved the account. (Defendant’s wages were $500.00 per month.) On that day defendant bought wearing apparel amounting to $315.28 on which he made an initial payment of $30.00 and to which $33.-00 was added as carrying charges, leaving an unpaid amount of $318.28. Two days later defendant purchased additional items (most of them being more of the same things) amounting to $232.13, to which plaintiff added $30.48 as carrying charges, leaving unpaid on that day the amount of $262.61. The total purchases on these two days, less the credit and plus the carrying charges, amounted to $580.89. Just how the sum of $569.89 claimed by this suit was arrived at is not explained.
On October 11, 1960, defendant consulted his attorney about bankruptcy. His petition to be adjudicated a bankrupt was filed October 20, 1960, and he was so adjudicated on that day. In due course, defendant received a complete discharge on January 16, 1961. This suit was filed on November 20, 1960.
Plaintiff contends that defendant’s indebtedness to plaintiff was not discharge-able by bankruptcy, because defendant obtained the credit by falsely representing to plaintiff that he had no other debts and by withholding a predetermined intention, to go into bankruptcy. j
The credit manager of plaintiff, testf-’ fied that he asked defendant if he owed any other debts and that defendant answered that he did not. Defendant denies positively that any such question was asked of him and says that he made no representations on the subject. (He did owe other debts.) We are not required to resolve that dispute, for the reason that the language of the bankruptcy law is explicit in the requirement that to prevent the discharge of a debt the false statement by the debtor as to his financial condition must be in writing. We quote the pertinent part of 11 U.S.C.A. § 32(c) (3), as follows:
“The court shall grant the discharge unless satisfied that the bankrupt has * * * obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or furnished in any manner whatsoever, a material false statement in writing respecting his financial condition.”
Plaintiff’s credit manager, who interviewed defendant on his application and approved the credit account, testified that their files contained a record of items purchased by this defendant from plaintiff in 1956, and that his payments were satisfactory. However, the defendant volunteered the information that his account in 1956 included a television which the plaintiff repossessed because of a $50.00 delinquency, which he paid after it was seized rather than lose the television. Plaintiff’s credit manager said that in connection with defendant’s application for credit on October 4, 1960, he requested a credit report on defendant from the New Orleans Retailers Credit Bureau and received information that defendant’s accounts since 1948 had been handled in a satisfactory manner and that the Bureau had received inquiries from a number of business houses and finance companies about defendant. The *618 testimony does not show whether this inquiry, by plaintiff was made before or after the credit account had been approved by him, but the manager did say that he made no follow-up and did not investigate the subject any further.
The testimony discloses two circumstances which it was necessary to consider. One circumstance is the kind and quantities of some of the items of clothing defendant purchased. On October 4th, defendant purchased several pairs of shoes, several raincoats, T-shirts, U-shirts, shirts, sweaters, jackets, etc., and two days later he bought a goodly number of the same items, all of which made what appears to be a rather unusual amount of such items for his family consisting of himself, his wife and two children.
The other circumstances noted is defendant’s testimony that he knew he owed more debts than he could pay, and that, while he had not decided to take bankruptcy when he made these purchases, he had thought about it. He said, “There was a sneaking suspicion that I might have to go, but, I can’t say I wanted to.”
Defendant said also that he did not actually decide to take bankruptcy until the day (October 11, 1960) he went to his lawyer’s office. In this connection there is a notation written on his schedule of debts filed with his petition to the effect that he had become convinced when he made the purchases for himself and family that it would probably be necessary to go into bankruptcy, though the purchases were not made with that intention, and that the bankrupt understands that under such circumstances the referee may reasonably order him to pay this debt, and that he is willing to do so. Nothing was done about it and the referee in due course issued a final discharge from all debts.
The two circumstances referred to are unusual, to say the least. The trial Judge gave written reasons. He was convinced of defendant’s honest purpose and that no fraud was perpetrated. The trial Court heard and observed these witnesses and we cannot say that manifest error has been committed.
The judgment is affirmed.
Judgment affirmed.