**SUPERIOR LOAN CORPORATION OF BUFFALO, a corporation, Plaintiff-Respondent,**

v.

**George ROBIE and Pauline Robie, Defendants-Appellants.**

**No. 9074.**

Missouri Court of Appeals, Springfield District.

Jan. 25, 1972.

Bussell, Hough, Greene & Bernhardt, David W. Bernhardt, Springfield, for defendants-appellants.

STONE, Judge.

In this jury-waived court-tried action on a promissory note, judgment was entered in favor of plaintiff Superior Loan Corporation of Buffalo (Superior) for and in the principal sum of $1,586.67 against defendants George Robie and Pauline Robie, husband and wife, who now appeal.

The pleaded affirmative defense upon which defendants relied was that their debt evidenced by the note in suit had been listed properly in schedules filed with their voluntary petition in bankruptcy during April 1969 and that their subsequent discharge in bankruptcy relieved them of further liability upon the note. On the other hand, Superior asserted in the trial court[1] that defendants' debt evidenced by the note was nondischargeable in bankruptcy because it was within the second of the three exceptions in § 17 of the Bankruptcy Act as amended [11 U.S.C.A. § 35(a) (2)]:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, *except such as . . . (2)* are liabilities [1] for obtaining money or property by false pretenses or false representations, or [2] *for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive*, or [3] for willful and malicious conversion of the property of another." (All emphasis herein is ours.)

The note in suit dated September 5, 1968, in the "face amount" of $1,725 (including interest) payable in twenty-five monthly installments of $69 each was "a renewal loan," from the proceeds of which the then outstanding balance of a prior loan by Superior to defendants was paid and they received "new money" in the sum of $391.-95. This was the *fourth loan* Superior had made to these defendants. The *first loan* was made on November 15, 1966, the *second loan* on May 27, 1967, and the *third loan* on March 26, 1968. Witness Ruble, Superior's manager, testified that a written financial statement signed by the borrowers was taken "on all loans," and such signed financial statements obtained in connection with the *second, third and fourth loans* were received in evidence upon trial. Each such statement was taken on a printed form in which the borrowers represented that the creditors and amount of indebtedness to each as written on the blank lines provided for that purpose constituted "a complete and accurate listing of all of my debts," excepting only "gas, electric, rent and water." In their signed financial statement of May 27, 1967 (the *second financial statement*), defendants recorded four creditors to whom they were indebted in the aggregate sum of $3,738.50.[2] In their signed financial statement of March 26, 1968 (the *third financial statement*), they listed three creditors and aggregate indebtedness of $1,400.[3] And in their signed financial statement of September 5, 1968 (the *fourth financial statement*) only two creditors and aggregate indebtedness of $1,300 were shown.[4] In their bankruptcy schedules they listed seven secured creditors and an aggregate indebtedness of $13,307.12 with the aggregate "value of securities" estimated

---

1. In failing to file a brief on appeal, Superior as respondent has incurred no penalty imposed by rule or statute but, by such failure, has indulged a practice repeatedly condemned by the courts and has left us dependent upon defendants'-appellants' presentation and our own research. Mannon v. Frick, 365 Mo. 1203, 1205, 295 S.W.2d 158, 161; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 319; Hunter v. Schwertfeger, Mo.App., 407 S.W.2d 606, 608(1); M.

F. A. Central Coop. v. Harrill, Mo.App., 405 S.W.2d 525, 527(2).

2. Chrysler Credit, $3,650; Shewmaker Motor $22.50; Marshfield Bank, $26; Ferrel Clothing, $40.

3. O'Bannon Bank, $100; Shewmaker Motor, $100; 1st National Bank, $1,200.

4. Shewmaker Motor, $100; 1st National Bank, $1,200.

at $11,400,[5] and thirty unsecured creditors to whom they were indebted in the aggregate amount of $4,009.57.[6] Upon trial, defendant George expressly admitted that all of the secured debts listed in defendants' bankruptcy schedules were outstanding when Superior's *fourth loan* was made on September 5, 1968, and inferentially conceded that all of the unsecured debts likewise were outstanding on that date. In fact, "most of them" were more than ten years old (so he said), although he readily acknowledged that more recent payments had been made on some of those debts.

As ably and earnestly presented by their counsel, the essence of defendants' position on appeal is that, in making the fourth loan on September 5, 1968, plaintiff Superior (a) had no right to rely, and (b) in fact did not rely, upon the written financial statement of that date admittedly signed by them. Only three witnesses testified, namely, R. F. Ruble, plaintiff Superior's manager, and the two defendants. In here urging outright reversal of the judgment nisi, defendants' counsel refer, in the argument section of their brief, only to the above-described financial statements and the testimony of witness Ruble to which we now attend.

When defendant George Robie sought a renewal loan and additional cash at Superior's office on September 5, 1968, manager Ruble first prepared and completed an *"application,"* which (as he explained) was "taken by us, previous to making a loan" but was not signed by defendants. Although it was produced by Ruble, was scrutinized by counsel, and was before the trial court, this application was not offered in evidence. That aside, Ruble said that, in preparing the application, he asked what defendants owed and then recorded in that document the names of the creditors and the amount owing to each as supplied by defendant George. Thereafter, on the same day the new note and a check were typed by Ruble's secretary; the *fourth financial statement* (on a form used by Superior)[7] was prepared by recording therein the information concerning defendants' creditors and indebtedness as theretofore furnished by defendant George and entered by Ruble in the loan application, to wit, defendants' indebtedness to Shewmaker Motors in the sum of $100 payable $10 per month and their indebtedness to 1st National Bank in the sum of $1,200 payable $55 per month; and the note and financial statement were

5. *Secured creditors, defendants' indebtedness to each, and their estimated "value of securities" in each instance as listed were*: Henry W. and Arva M. Rieschel (contract for deed), $6,800 and $7,000; Chrysler Credit Corp. (security agreements on 1967 and 1968 Plymouth automobiles), $3,287.90 and $3,100; Turner Auto Sales (s/a on 1964 Chevrolet), $700 and $500; General Motors Acceptance Corp. (s/a on household furniture and appliances), $266.70 and $250; Pioneer Finance Co. (s/a on garden tiller and lawn mower), $300 and $200; Silvey Finance Co. (s/a on sweeper and deodorizer), $227.52 and $150; Superior (plaintiff herein—s/a on household goods), $1,725 and $200.

6. Shewmaker Motor Co., $1,492.16; Oscar Hoover, $520; Dr. Griffin, $300; Robert M. Coleman, $251.45; Field Enterprises, $251.45; Aldens, $192.27; Dr. W. Roland Langston, $135; O'Bannon Bank, $104; Southwestern Bell Tel. Co.,

$75.24; Elkland Farmers Exchange, $73.90; John Rudin & Co., Inc., $70.85; Western Auto, $60; Howard Johnson, $55; Ford Garage, $40; Fingerhut Products Co., $36.25; Bill Chapman, $32; Clifford Richardson, $30; Barney Hyde, $30; Mr. Stokesberry, $30; Pattens Grocery, $30; O. C. Grey, $28; Howard McCurry, $27; Murrel Plumbing & Appliance, $27; Ben Ferrell, $25; Oren Coofer, $20; Farrel Clothing Co., $20; Dr. Studer, $17.50; A-1 TV Shop, $15.50; Jim Beckner, $10; Williams Bros., $10.

7. At one point in his testimony, *defendant George* asserted that, when Ruble handed him this form, he (Ruble) said "Put two or three [creditors] down there that you owe," and that defendant George responded, "Well, that's not all I owe," to which Ruble allegedly replied, "That'd be enough." *Ruble* denied any such conversational exchange.

signed by defendant George, then taken by him to the Robie home for signature by his wife, defendant Pauline, and subsequently returned to plaintiff's office where, *after the signed instruments were delivered to Ruble,* the check for the "new money" in the sum of $391.95 was given to defendant George.

*Did plaintiff Superior have the right to rely upon defendants' fourth financial statement?* The insistence of defendants' counsel upon a negative answer to that question rests essentially upon the premise "that had plaintiff merely opened its eyes to its own files it would have seen that [defendants] had debts other than those listed" in their *fourth financial statement.* This (so counsel argue) because (a) defendants' *second financial statement* dated May 27, 1967, disclosed an indebtedness of $3,650 to Chrysler Credit payable in monthly installments of $109.50 each which, on that basis, would not have been completely liquidated when their *fourth financial statement* was taken on September 5, 1968, and (b) both defendants' *third financial statement* dated March 26, 1968, and their *fourth financial statement* listed the same indebtedness of $100 to Shewmaker Motor and $1,200 to 1st National Bank, although the third financial statement indicated that those obligations were payable in monthly installments.

■ In considering this argument we have in mind, as no doubt the trial court did, other relevant evidence and circumstances. Although we are not informed as to the extent of defendants' formal education, it is abundantly apparent from the record as a whole that they are literate— a significant element in cases of this character.[8] The form, on which the *fourth financial statement* was completed, opened

with the clear, conspicuous caveat that the statement was given "to induce Superior Loan Corporation . . . to make me a loan of money and to accept payment over an extended period of time . . . ." Cf. Avco Finance Co. of Marshall v. Baker, Mo.App., 472 S.W.2d 46, 47. Plaintiff's manager Ruble stated on cross-examination that "Mr. Robie [defendant George] had been making awful good money" and that "he was going into business." And it was *defendant George* who in his testimony brought into the record the fact that, when manager Ruble examined defendants' *fourth financial statement,* he (Ruble) commented that "It looks like you've been paying your accounts down." However, there was no suggestion that defendant George said or did anything to correct or disperse this disclosed but mistaken belief engendered by the false financial statement. At this point suffice it to record our considered conclusion that whether or not plaintiff Superior had the *right to rely* upon defendants' *fourth financial statement* was a submissible issue for determination in the first instance by the trial court.

■ *Did plaintiff Superior rely upon defendants' fourth financial statement?* The theory of defendants' counsel is that "the reliance, if any, of [plaintiff's manager] Ruble in making the loan to [defendants] was based upon an instrument prepared by Ruble himself and never executed by either [defendant]," namely, the loan application preliminarily prepared by Ruble but not signed by defendants, and that "what was stated on this [*fourth*] *financial statement* did not effect (sic) his decision as to whether or not to make the loan because he had already been given information by defendant George Robie upon which he relied to make this loan." Certain fragments of Ruble's testimony, *if isolated and*

---

8. Contrast *Sweet v. Ritter Finance Co.,* D.C.Va., 263 F.Supp. 540, 542, where the husband could neither read nor write other than to sign his name; *United States v. Syros,* D.C.Mo., 254 F.Supp. 195, 198, where the husband was " 'not too good with reading or writing the

English language' "; and *In re Wolman,* D.C.Me., 36 F.2d 803, 804, where the debtor was a junk dealer who could neither read nor write other than to sign his name—all three cases being among those cited in instant defendants' brief.

*accepted out of context*, might afford some support for the above-stated contention. But where, as here, testimony of a witness, even though not altogether consistent, is not inherently self-contradictory [Kestner v. Jakobe, Mo.App., 446 S.W.2d 188, 194], *it must be considered as an integrated whole.*[9] When so viewed, the clear and unmistakable gist and import of Ruble's testimony was that, on the information preliminarily obtained from defendant George and recorded on the unsigned application, he had directed his secretary to prepare appropriate loan instruments and intended to make the requested loan *if* the signed financial statement, when completed and delivered to him, did not materially differ from the antecedent information, but that otherwise the loan would not have been closed. That epitomization of the substance and meaning of Ruble's testimony bearing on the question under consideration is consonant with and confirmed by the undisputed fact that Ruble did not part with possession of plaintiff's check for the "new money" until the *fourth financial statement*, signed by both defendants, and reflecting indebtedness "the same as taken on the application already," had been completed and delivered to him. In this connection, we also have noted particularly the trial court's searching interrogation of Ruble relevant to the issue of his reliance vel non upon that signed financial statement.

█ The fact of reliance need not be established by direct evidence but may be inferred from all of the facts and circumstances in the case.[10] And for a false financial statement furnished to lender by borrowers to bar their release from liability by reason of their subsequent discharge in bankruptcy [Bankruptcy Act § 17; 11 U.S.C.A. § 35(a) (2)], it is not necessary that such false financial statement be the sole thing upon which the lender relied in making a loan or in extending or renewing credit.[11] We have no doubt but that the issue as to whether or not instant plaintiff relied on defendants' false (fourth) financial statement was submissible.

█ We recognize that, as defendants' counsel emphasize, a valid discharge in bankruptcy affords a prima facie defense against all debts and the burden of proof then rests on the creditor to show that the debt is nondischargeable. United States v. Syros, D.C.Mo., 254 F.Supp. 195, 198(4); Sweet v. Ritter Finance Co., D.C.Va., 263 F.Supp. 540, 542(1); Family Finance Corp. v. Hodges, 63 Misc.2d 74, 311 N.Y.S.2d 222. And on this appeal from the judgment in a court-tried case, we are cognizant that our duty is to "review the case upon both the law and the evidence as in suits of an equitable nature" [V.A.M.R. 73.01(d); V.A.M.S. § 510.310(4)], and that, in our review de novo, we may reach our own conclusions as to the weight of the evidence. In re Estate of Ritter, Mo., 462 S.W.2d 719, 721; Hampton v. Niehaus, Mo., 329 S.W.2d 794, 800(6); Masterson v. Plummer, Mo.App., 343 S.W.2d 352, 354(1). But we are also mindful that in the discharge of our appellate function we must heed the plain ad-

9. Dimond v. Terminal R. R. Ass'n. of St. Louis, 346 Mo. 333, 353, 141 S.W.2d 789, 799(12); Citizens State Bank of Nevada v. Wales, Mo.App., 469 S.W.2d 750, 758; City of Ash Grove v. Davis, Mo. App., 418 S.W.2d 194, 202(8); Garrard v. State Dept. of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 592(25); 32A C.J.S. Evidence § 1031(1), l. c. 690.

10. Universal C.I.T. Credit Corp. v. Tatro, Mo.App., 416 S.W.2d 696, 703(13, 14); Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 196, 93 S.W.2d 1083, 1087 (7). See Industrial Bank of Commerce

v. Bissell, 2 Cir., 219 F.2d 624, 626(3); M-A-C Loan Plan, Inc. v. Crane, 4 Conn. Cir. 29, 225 A.2d 33, 36.

11. Avco Finance Co. of Marshall v. Baker, Mo.App., 472 S.W.2d 46, 48(2); Lloyd v. Industrial Bank of Commerce, 2 Cir., 241 F.2d 924; Banks v. Siegel, 4 Cir., 181 F.2d 309, 310(1–3); Yates v. Boteler, 9 Cir., 163 F.2d 953, 955(2); Time Finance Corp. of Springfield v. Clark, 6 Conn.Cir. 200, 269 A.2d 88, 91 (7); Beneficial Finance Co., Inc. v. Gardache, La.App., 164 So.2d 132, 135(4).

monition that due regard be given to the superior opportunity of the trial court to judge of "the credibility and characteristics of the witnesses who testified before him" [12] must respect the fundamental principle that, in weighing the evidence, the trial court might have believed or disbelieved any testimony affirmatively or defensively adduced by either of the parties, even though such testimony was uncontradicted and unimpeached,[13] and must honor the explicit mandate that "[t]he judgment shall not be set aside unless clearly erroneous." [14]

■ The reported opinions in the *Syros*, *Sweet* and *Hodges* cases, supra, upon which instant defendants lean heavily, were handed down by *trial* courts who, from personal scrutiny of the witnesses, had been accorded a superior opportunity to determine the credibility of the witnesses and the weight to be accorded to their testimony. Thus in

*Hodges*, supra, 311 N.Y.S.2d at 225, we find the blunt declaration, "I observed the defendant [borrower] on the stand, and I believe the story she tells . . . ." We have carefully examined the opinions in the other cases cited in defendants' brief,[15] each of which must, of course, be read in the light of the facts in that particular case [State on Inf. of Dalton v. Miles Laboratories, 365 Mo. (banc) 350, 364, 282 S.W.2d 564, 573(12), and cases there cited], and find none of them persuasive on the facts presented by the record before us. Although we note marginally an array of foreign authority with which our conclusion is in harmony,[16] in the final analysis every holding must stand on its own factual bottom.

The judgment for plaintiff is affirmed.

TITUS, C. J., and HOGAN, J., concur.

12. Peine v. Sater, Mo., 289 S.W.2d 101, 102(1); Cull v. Pfeifer, Mo., 307 S.W.2d 424, 428(5); Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771(3); Galemore v. Haley, Mo.App., 471 S.W.2d 518, 525.

13. Adam Hat Stores, Inc. v. Kansas City, Mo. (banc), 316 S.W.2d 594, 598(3); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 787(5); Ethridge v. Perryman, Mo., 363 S.W.2d 696, 701(5); State ex rel. Rice v. Public Service Com'n., 359 Mo. (banc) 109, 116–117, 220 S.W.2d 61, 65(9, 10); Bourne v. Manley, Mo.App., 435 S.W.2d 420, 428(9).

14. V.A.M.R. 73.01(d); V.A.M.S. § 510.310 (4). See Rothenhoefer v. City of St. Louis, Mo., 410 S.W.2d 73, 75(2); In re Estate of O'Neal, Mo., 409 S.W.2d 85, 90(1); Sanderson v. Richardson, Mo.App., 432 S.W.2d 625, 630(5); Clinton v. Staples, Mo.App., 423 S.W.2d 1, 3(4, 5).

15. Friendly Finance Discount Corp. v. Hayden, La.App., 171 So.2d 717; Sears, Roebuck & Co. v. Sofio, La.App., 138 So.2d 616; Gonzales v. Aetna Finance Co., Nev., 468 P.2d 15; First Credit Corp. v. Behrend, 45 Wis.2d 243, 172 N.W.2d 668.

16. Associates Consumer Finance Co. v. Crapo, 21 Mich.App. 195, 175 N.W.2d 315; Beneficial Finance Co. of Charleston v. Collins, 150 W.Va. 655, 149 S.E.2d 221; Tower Finance Corp. v. Winemiller, 43 Ill.App.2d 10, 192 N.E.2d 411; H. A. Company of Provo v. Campbell, 17 Utah 2d 401, 413 P.2d 595; Household Finance Corp. v. Walters, 8 Ariz.App. 114, 443 P.2d 929; Budget Finance Plan v. Haner, 92 Idaho 56, 436 P.2d 722; Household Finance Corp. of Suitland v. Hamer, 248 Md. 567, 238 A.2d 112; Liberal Finance Gentilly, Inc. v. Brister, La.App., 152 So.2d 331; M-A-C Loan Plan, Inc. v. Crane, 4 Conn.Cir. 29, 225 A.2d 33; Local Industrial Finance Co. v. McDougale, Ky., 404 S.W.2d 789.