**UNIVERSAL C.I.T. CREDIT CORPORATION, Plaintiff-Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant,**
and
**Donald L. SENSENICH, Defendant and Third-Party Plaintiff, Appellant-Respondent,**

v.

**JACK BANNING FORD SALES, INC., Third-Party Defendant and Fourth-Party Plaintiff-Appellant-Respondent,**

v.

**KANSAS CITY AUTOMOBILE AUCTION COMPANY, Fourth-Party Defendant-Appellant-Respondent.**

Nos. 25934, 25955, 25963.

Missouri Court of Appeals, Kansas City District.

Jan. 19, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 6, 1973.

Application to Transfer Denied May 14, 1973.

Robert Devoy and Richard N. Brown, Brookfield, for appellant, Donald L. Sensenich.

Frederick Beihl, Sam L. Colville, Kansas City, for K. C. Auto Auction Co.

Before SHANGLER, C. J., PRITCHARD and WASSERSTROM, JJ., and LAURENCE SMITH, Special Judge.

WASSERSTROM, Judge.

This four-party litigation poses the always difficult question of which one of several innocent parties should bear the loss of stolen goods. The specific factual context in which that question arises here is undisputed.

Kansas City Automobile Auction Company is engaged in a business of conducting sales at auction on behalf of automobile dealers having surplus automobiles. The bidders who attend these weekly auctions are also automobile dealers. On September 24, 1969, one of these auctions was conducted by Auction Company, and the Dodge automobile that is the subject of present controversy was sold to Jack Banning Ford Sales, Inc.

Thereafter, Banning resold this Dodge automobile to Donald L. Sensenich. This purchase was financed by Universal C.I.T. Credit Corporation. The credit transaction was in the form of a Security Agreement signed by Banning and Sensenich, which was then assigned by Banning to C.I.T. Sensenich also procured collision insurance covering the automobile, with a loss payable clause to C.I.T.

Subsequently, the Dodge automobile in question was demolished in a highway accident. In connection with the investigation accompanying the wreck, it was discovered that the automobile had been stolen prior to the time that it came into the hands of Auction Company, and that therefore, the auction sale on September 24, 1969, did not convey good title.

Upon acquiring the information concerning this insufficiency of title, Sensenich terminated any further payment to C.I.T., and he promptly gave notice to Banning of revocation of his acceptance of the automobile. Banning in turn gave notice to Auction Company and requested that Auction Company satisfy the demands of Sensenich. Auction Company denied liability.

Faced with this impasse, C.I.T. filed suit against Sensenich in Count I on the Security Agreement, and against the insurance company in Count II on the insurance policy. A settlement (accomplished in some manner not disclosed by the transcript on appeal) was made with the insurance company, and Count II of the C.I.T. petition was dismissed before trial.

Sensenich filed answer to Count I of the C.I.T. petition, and also filed a third-party petition bringing in Banning as a third-party defendant. Sensenich's third-party petition against Banning alleged generally the suit against him by C.I.T. and claimed indemnity from Banning under an implied warranty of title. Banning in turn filed a fourth-party petition against Auction Company alleging a right to reimbursement under an implied warranty of title from Auction Company to Banning.

The case was tried without a jury, and the trial court entered judgment for C.I.T. against Sensenich for the balance due under the Security Agreement, after giving credit for the insurance recovery, and also allowed attorney's fees in favor of C.I.T. of 15% as provided in the Security Agreement, the total so allowed to C.I.T. being $2,207.78.[1] Judgment was also entered in

---

1. The transcript on appeal does not disclose how this sum was calculated. Auction Company in its brief states that the award represents $3,058.65 owing from Sensenich on the Security Agreement, less $968.32 paid in settlement by the insurance company, plus $116.88 as costs, expenses and contractual right to attorney's fees. That description of the computation has not been challenged by Sensenich and is generally in accord with Sensenich's arguments and such portions of the record as have been filed here.

favor of Sensenich against Banning in the sum of $2,998.50. The exact manner of computation of the latter figure is not disclosed by the abbreviated record filed on this appeal, but Sensenich states in his briefs, and his after-trial motion and the court's ruling thereon support the inference, that the sum awarded to Sensenich did not include any allowance for attorney's fee to him, either in resisting the C.I.T. suit or in pressing the third-party claim against Banning.

The judgment further awarded Banning the sum of $3,523.50 against Auction Company. While the abbreviated transcript on appeal does not show how this figure was computed, the parties in their briefs are in agreement that the award to Banning consisted of the judgment against him in favor of Sensenich plus an allowance of $525.00 as an attorney's fee to Banning in defending against the Sensenich claim.

Appeals were filed by Sensenich, Banning and Auction Company, and all three have been consolidated by order of this Court. Banning has filed no brief and has made no appearance here. The record indicates that it has gone out of business.

Auction Company, on its appeal, presents these points: (1) that there is no legal basis for liability against it, for the reason that an auctioneer acts solely as an agent and cannot be held to have given any implied warranty; and (2) that if it is liable at all, its liability must be confined to the value of the automobile at the time of the auction sale, which was the price paid by Banning of $2,415.00.

The points upon which Sensenich relies on his appeal are: (1) that he should have been awarded attorney's fees both in resisting the C.I.T. claim and also for prosecuting his third-party claim against Banning; and (2) that all judgments should have been as net damages directly against Auction Company for each of the three claimants.

I

Preliminary to a discussion of the points assigned as error, certain pending motions which were taken for decision with the case must be disposed of. Each of the pending motions is hereby overruled for reasons as follows:

■ A. Auction Company has moved for an order in its favor (meaning a reversal of the judgment against it) on the ground that Banning has defaulted in the filing of any brief in this Court. That default is sufficient ground for the dismissal of Banning's separate appeal, and we now do so pursuant to the provisions of Rule 84.08 V.A.M.R. However, the failure of Banning to file a respondent's brief in connection with Auction Company's appeal, while subject to condemnation, does not carry any penalty other than a forfeiture of the right to be heard. Superior Loan Corp. v. Robie, Mo.App., 476 S.W.2d 144; State ex rel. Rhine v. Montgomery, Mo. App., 422 S.W.2d 661; Hunter v. Schwertfeger, Mo.App., 407 S.W.2d 606.

■ B. Auction Company has also moved to strike the brief and to bar argument by Sensenich, purportedly as respondent in behalf of Banning, in connection with Auction Company's appeal. Sensenich does appear to have a legitimate interest in making this argument for Banning, since Sensenich has a judgment herein against Banning which it may not be able to collect except through execution and garnishment on the judgment in favor of Banning against Auction Company. In any event, the brief and argument, in this respect by Sensenich will be accepted and considered in the nature of a brief amicus curiae.

■ C. Sensenich has filed motion for damages against Auction Company under Rule 84.19 V.A.M.R. on the allegation that Auction Company's appeal is frivolous. As set forth in greater detail in subsequent portions of this opinion, we hold that the claims of error made by Auction Company

on this appeal cannot be sustained. Nevertheless, Auction Company cannot be said to have acted vexatiously, since the points which it raises have never been decided under the Uniform Commercial Code by any court in this State. The courts were reluctant to apply the penalty provisions of the predecessor Rule 83.13(d), and we have a like reluctance to do so under the new Rule 84.19. We are unwilling on the whole record to say that Auction Company "has prosecuted an appeal so meritless as to negative all reasonable theories of honest mistake regarding the application of law to the facts, and has knowingly done so in bad faith and for mere vexation and delay." Bidleman v. Morrison Motor Freight, Mo.App., 273 S.W.2d 745, 1. c. 750–751. Accord: DeMayo v. Lyons, Mo., 243 S.W.2d 967; St. Louis-San Francisco Ry. Co. v. Morrison, Mo.App., 439 S.W.2d 27; Butler v. Butler, Mo.App., 379 S.W.2d 175.

D. Sensenich has filed a motion for the allowance of attorney's fees and other expenditures in connection with this appeal. This motion must be denied for the same reasons set forth in Point IV–B of this opinion.

## II

Auction Company's principal argument on this appeal is that as an auctioneer it was a mere agent, and that any implied warranties were those of its principal who was the dealer who had delivered the car for sale at auction. This question has as its starting point the Uniform Commercial Code, § 400.2–312 V.A.M.S., which now codifies the law of implied warranty of title in connection with the sale of chattels. This section provides that there shall be a warranty that the title conveyed is good, except under "circumstances which give the buyer reason to know that the person selling does not claim title in himself . . . ." Auction Company relies upon the quoted words as exempting auctioneers, and it looks for support in § 13 of the Uniform Sales Act, which did specifically exempt auctioneers from liability on implied warranty of title.

That reference cannot avail Auction Company, because Missouri never adopted the Uniform Sales Act; and even in states which did previously have the Uniform Sales Act, the Uniform Commercial Code was intended to constitute a complete revision. Instead of looking at the Uniform Sales Act, the correct recourse for purposes of interpretation must be to the common law of this State, in accordance with the provision of § 400.1–103. See Safeway Stores, Inc. v. L. D. Schreiber Cheese Co., 326 F.Supp. 504, 1. c. 510, n. 13.

■ Under the common law of this State, as well as under the law generally, an auctioneer is liable as a seller and is held to the burdens of an implied warranty of title, unless the auctioneer discloses the name of his principal at the time of sale. This principle is stated succinctly in the early case of Schell v. Stephens, 50 Mo. 375, 1. c. 379, as follows:

"The mere fact that defendants were acting as auctioneers is not of itself notice that they were not selling their own goods, and they must be deemed to have been vendors, and responsible as such for title, unless they disclosed at the time the name of the principal."

The same rule has been followed consistently since. Thompson, Payne & Co. v. Irwin, Allen & Co., 42 Mo.App. 403, 1. c. 419; Dale v. Pierson—Brewen Commission Co., 160 Mo.App. 314, 142 S.W. 745; Pasley v. Ropp, Mo.App., 334 S.W.2d 254. For statements of the same rule throughout the United States, see 7 Am.Jur.2d, Auctions and Auctioneers, § 66, p. 278; 80 A.L.R.2d 1237, 1. c. 1241.

■ Auction Company argues that it should not be held as a seller, because of some evidence in the record emphasized by it to the effect that Banning should have known that the Dodge automobile in question was being sold by Auction Company merely in its capacity as an auctioneer.

That argument proceeds on a mistaken view of the law. As stated in the Schell case quoted above, the mere fact that a defendant is acting as an auctioneer is not in itself sufficient notice to provide immunity from liability. The requirement is that auctioneer disclose the name of its principal, and the record in this case is abundantly clear that this was not done. It is conceded that on the copy of the sales receipt delivered to Banning, the name of Auction Company's principal was purposely blocked out. The evidence by Auction Company itself was that this practice was intentional in order to prevent the buying dealer from "going around" the Auction Company. It was also conceded by Clemmons, Auction Company's general manager, that a bidder was not advised and could not ascertain the name of the selling dealer until after the sale had already been consummated. Under these admitted facts, Auction Company must be held to the obligation of an implied warranty to Banning. Moreover, there is sufficient evidence in the record to support a finding that Banning did not know either actually or constructively whether Auction Company was selling as agent or principal; and under these circumstances, it must be deemed that the trial court did so find. Rule 73.01(b), V.A.M.R.

### III

Auction Company's alternative argument is that if liable at all, its liability cannot exceed the value of the automobile, measured by the amount received by it from Banning. In making this argument, Auction Company is relying basically on the general measure of damages for breach of warranty as set forth in § 400.2–714 V.A. M.S.; and it denies that this case comes within the concept of "consequential damages" which is recognized by § 400.2–714(3).

■ The extent to which consequential damages will be allowed is provided in § 400.2–715(2)(a), where that term is de-fined as including "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know . . ." This statutory definition of allowable consequential damages is essentially the same as the rule at common law. Under the common law, the courts of this State prior to the Uniform Commercial Code in an unbroken line of cases have held that a buyer may collect as consequential damages his expenses including attorney's fees in defending title after having given notice to his seller that a third party is claiming adversely. Schaefer v. Fulton Iron Works Co., Mo.App., 158 S.W.2d 452; Roark v. Pullam, 207 Mo.App. 425, 229 S.W. 235, 1. c. 237; Safeway Stores, Inc. v. L. D. Schreiber Cheese Co., D.C., 326 F.Supp. 504. See also Ward v. City National Bank & Trust Co., Mo., 379 S.W.2d 614, 1. c. 620.

■ This result is especially compelled under the circumstances of this case. Under the evidence here, Auction Company should have known and must have realized that Banning would have loss beyond the wholesale value of the car paid by him, should it turn out that the title to the car was defective. By Auction Company's own argument, it knows that all bidders who attend its auction sales are automobile dealers. Obviously, those dealers are buying automobiles for resale; and also obviously, those dealers will be warranting title in turn to their vendees. Thus, if the title received by the auction bidder, in this case Banning, turned out to be bad, then the bidder-purchaser would stand to lose a good deal more than the bare original auction purchase price. For this reason, it must be concluded that the potential loss within the contemplation of the parties included costs which might be incurred in defending suits by subvendees, as well as lost profit of the resale and incidental expense.

In support of its contention that judgment will not lie against it for the attorney's fees paid by Banning in defense of

the Sensenich claim, Auction Company cites 46 Am.Jur., Sales, § 755, p. 884, where it is stated: ". . . it has been held that the measure of damages against the original seller cannot be increased by reason of liability subsequently incurred by the buyer on account of independent warranties of the same property to later purchasers." In support of that statement, the text cites Smith v. Williams, 117 Ga. 782, 45 S.E. 394. An opposite result was reached in Thurston v. Spratt, 52 Me. 202. The Smith case is also out of harmony with the philosophy of the Missouri decisions on this point cited above. No significant distinction can be perceived for present purposes whether the claim made against the buyer is by a subvendee or someone completely outside the chain of transactions initiated by Auction Company. Moreover, the Smith case is readily distinguishable from the present case on the ground that the case at bar involves a sale to a dealer whom the seller was bound to know would make a resale of the goods in the ordinary course of his business, whereas there is nothing in the Smith opinion to indicate that this was true in that case.

It follows that there was no error in including in Banning's judgment an allowance for attorney's fee incurred in defense of the Sensenich claim.

## IV

On Sensenich's appeal, he claims a right to attorney's fees both in defense of the C.I.T. claim and also in prosecution of his third-party claim against Banning. Since these two items involve different considerations, they must be discussed separately.

■ A. As already held under Point III of this opinion, a buyer under a warranty may generally claim as damages against his seller a reasonable attorney's fee incurred in defending an adverse claim of title asserted by a third party. Nevertheless, Sensenich is not entitled to the benefit of this rule with respect to his defense of the claim against him by C.I.T.

This results from the nature of the claim which was asserted by C.I.T.

The suit by C.I.T. against Sensenich was a claim for money loaned, as evidenced by the Security Agreement. This is in contrast to a claim of adverse title by C.I.T., which would have been a proper predicate upon which Sensenich would have been able to call upon Banning to defend and to claim an attorney's fee for undertaking a defense if Banning declined to do so.

The fact of the matter is that Sensenich did not really intend to, nor did he, defend against the C.I.T. petition. There was no legitimate defense. It appears that his real strategy in litigating in this case was not because of any doubt as to the claim of C.I.T., but rather Sensenich was using the case instituted by C.I.T. as a springboard by which to assert his third-party claim against Banning. As will be discussed below, Sensenich has no right to collect attorney's fees for pursuing his claim for breach of warranty against Banning, and he cannot successfully contend that his pursuit of that affirmative claim was actually in the nature of a defense against C.I.T.

Sensenich in his brief argues forcefully that he should be permitted to recover attorney's fees at least for the services rendered by his attorney in collecting on the insurance policy. He contends that considerable work and effort was devoted to this endeavor, and that the results redounded to the benefit of both Banning and Auction Company, since that recovery was credited against the balance due to C.I.T., and thereby reduced the amount of claim that flowed through this four-party channel of liability.

■ Assuming, without deciding, that this might be the basis for a recovery by Sensenich of at least part of his attorney's fees, the argument cannot be considered here because it constitutes a departure from the theory upon which the case was presented in the trial court. Moreover,

and aside from anything else, there is no adequate evidence in the abbreviated transcript on appeal to show the nature and extent of the legal work performed by Sensenich's attorney in connection with the insurance issue.

■ B. The second branch of Sensenich's claim for attorney's fees relates to services incurred in connection with enforcing the Sensenich claim for Banning's breach of warranty. Any allowance for this item of attorney's fees would fly in the teeth of an unvarying line of Missouri cases which hold that an attorney's fee may not be allowed for the direct claim against the defendant unless provided for by contract (such as a note) or allowed by statute. Edwards v. Smith, Mo., 322 S.W. 2d 770, l. c. 777; City of Kansas City v. Kindle, Mo., 446 S.W.2d 807, l. c. 818; Herhalser v. Herhalser, Mo.App., 401 S. W.2d 187; Willis v. American National Life Insurance Co., Mo.App., 287 S.W.2d 98, l. c. 107.

V

■ Sensenich's next claim of error is stated by him as follows: "The court erred in failing to enter judgment under impleader practice as net damages for each other party (plus all costs on Count I) against fourth-party defendant". To the extent that Sensenich is here attempting to complain of the form of the judgment in favor of C.I.T. he has no status to do so. If C.I.T. had any rights directly against Auction Company, it was the option of C. I.T. whether or not to proceed thereon. When it choose not to make claim against Auction Company, Sensenich had no right to insist otherwise. State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S.W.2d 127; Crouch v. Tourtelot, Mo., 350 S.W.2d 799. And absent an amendment to its petition by C.I.T. to state a cause of action against Auction Company, no judgment could be entered directly between those parties. Kahn v. Prahl, Mo., 414 S.W.2d 269, l. c. 278.

To the extent that Sensenich is attempting to make complaint on behalf of Banning in this regard, no such complaint lies because Banning did get a judgment direct against Auction Company. Therefore, our consideration of this assignment reduces itself to the narrow question of whether Sensenich is entitled to a direct judgment against Auction Company. In this connection, it must be noted that Sensenich did not make Auction Company a party to his third-party petition, he did not attempt to state any cause of action against Auction Company, and he did not pray any relief against Auction Company. More fundamentally, however, he had no right of action against Auction Company as a matter of substantive law.

■ The law on this subject is that a warranty of title on personal property runs only to the immediate buyer and does not extend to subvendees. For this purpose, a warranty of title does not run with the chattel in the manner that a covenant for title runs with land. As stated in Crocker v. Barron, Mo.App., 234 S.W. 1032, l. c. 1033, a case involving suit for breach of warranty of title on personal property: "Warranties of Chattels are available only between parties to the contract, and not in favor of third parties." The law generally is similarly stated in 77 C.J.S. Sales § 352, p. 1259, as follows: "A subvendee has no right of action for breach of warranty to the original purchaser or against one who sold the goods to the person from whom the purchaser bought."

It is true that the requirement of privity in suits on some warranties has been greatly relaxed in recent years. However, that relaxation has occurred for the most part in cases of personal injury where there exists some element of tort. Smith v. Ford Motor Co., Mo.App., 327 S.W.2d 535; see also Westerhold v. Carroll, Mo., 419 S.W. 2d 73; Anderson v. Boone County Abstract Co., Mo., 418 S.W.2d 123. This case does not come within the rationale of the cases which have, in selected situations, permitted recovery on warranties (usually

relating to quality or fitness) without the necessity of privity of contract.

 Sensenich, in his brief, attempts to argue that direct recovery by him against Auction Company is authorized by Missouri third-party practice under Rule 52.11 V.A.M.R. and the previous § 507.080. Our procedural rules do not purport to, and cannot be given the effect of expanding or changing substantive rights. State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S. W.2d 127. Moreover, the authorities cited by Sensenich in connection with this point do not bear out his construction.

Sensenich includes one final argument under this point to the effect that C.I.T. had a right under its Security Agreement to sue Banning direct, and that an unconscionable result is produced unless C.I.T. is required to do so, thereby leaving Sensenich out of the chain of liability. This argument cannot be considered for two reasons. In the first place, this argument does not come within the scope of the Point Relied On, under which this argument is made. The assignment made by Sensenich is that all judgments for each claimant should have been entered directly against "fourth-party defendant" Auction Company. The argument in question is completely different in that Sensenich here argues that judgment should have been entered in favor of C.I.T. directly against third-party defendant Banning. In the second place, it does not appear that this argument was properly raised or preserved in the trial court. Indeed, Sensenich specifically disclaimed the present argument in his Amended Motion for Amended Judgment.[2]

2. Paragraph 1 of that Motion filed in the trial court is as follows:
"The original motion of this Defendant set forth the difference between Section 507.080 RSMo (1969) and Civil Rule 52.10 concerning impleader practice as authorizing a judgment by the Plaintiff directly to the Third-Party Defendant, by-passing the Defendant

All motions filed in this Court now pending are overruled. The appeal by Banning is dismissed. The judgment of the trial court is affirmed.

All concur.

and Third-Party Plaintiff. Additional research into Federal Rule 14, upon which the Missouri Statute provision, and later Rule, were predicated, discloses that such a construction is most probably not authorized. Accordingly, the above suggested amended form of judgment has been provided."