**Noval CANTRELL and Nevada Cantrell, Plaintiffs-Respondents,**

v.

**Marn CAFOUREK, Defendant-Appellant,**

and

**Nedra Cafourek, Defendant.**

No. 9427.

Missouri Court of Appeals, Springfield District.

Aug. 2, 1974.

Motion for Rehearing or to Transfer Denied Aug. 28, 1974.

Application to Transfer Denied Oct. 14, 1974.

3. Webster's International Dictionary, Second Edition, defines "thereby": 1. By that; by that means; in consequence of that.

R. Jack Garrett, Michael L. Shortridge, West Plains, for defendant-appellant.

R. D. Moore, Rich D. Moore, John C. Holstein, West Plains, for plaintiffs-respondents.

WARDEN, Special Judge.

In this jury-waived court-tried action on a promissory note, judgment was entered in favor of plaintiffs-respondents Noval Cantrell and Nevada Cantrell against Marn Cafourek, defendant-appellant, the plaintiffs-respondents having dismissed as to defendant Nedra Cafourek prior to trial. Judgment was in the principal sum of $21,476.51, plus interest and attorney fees against the defendant-appellant Marn Cafourek, who now appeals.

The pleaded affirmative defense on which appellant relied was that the debt evidenced by the note in suit had been listed properly in schedules filed with his voluntary petition in bankruptcy during January 1968, and his subsequent discharge in bankruptcy relieved appellant of further liability upon the note. The respondents asserted in the trial court that appellant's debt evidenced by the note was not dischargeable in bankruptcy because it was within the second of the three exceptions in Section 17 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 35(a)(2):

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

\*      \*      \*      \*      \*      \*

(2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive  .  .  .  ."

The note in suit, dated April 25, 1963, in the sum of $54,504.58 (including interest) payable in weekly installments of $100 each, was reduced by payments made by defendants so that at the time of trial there was $33,767.50 due and owing; however, respondents had received $11,090.99 from the bankruptcy court after appellant had filed bankruptcy. The note expressly provided for an acceleration clause and ten per cent attorney fees in case the note was placed in the hands of an attorney for collection. The note was in payment of a furniture business which appellant had purchased from respondents; the note was secured by a chattel mortgage on, among other things, the inventory of the business. In October 1967, appellant failed to make two weekly payments of $100 each and respondent Noval Cantrell requested a written financial statement concerning appellant's then financial status. Appellant supplied this written financial statement to respondents and it indicated that appellant's net worth was approximately $26,000. Respondents relied on this written financial statement to extend credit on appellant's note rather than foreclosing under the acceleration clause of the note, and thereafter in January 1968 appellant filed his petition in bankruptcy.

Appellant's position on appeal is (1) that respondents failed to prove the necessary elements to entitle them to use the defense of fraud and, in particular, appellant contends that respondents (a) did not rely on the written financial statement, (b) if plaintiffs did rely on the written financial statement, this was not a material reliance, (c) the financial statement was not in fact false nor did appellant know that it was false, and (d) the respondents were not in fact damaged even if they did rely on this financial statement; (2) that respondents failed to assert in the bankruptcy proceedings the alleged fraud that appellant participated against them and as a result they are now estopped from asserting this alleged fraud; (3) that there was no proof that the note was properly executed, and finally, (4) that respondents' action was an action in contract and therefore appellant's discharge in bankruptcy was a complete defense thereto.

Did respondents produce evidence establishing that they did rely materially on a false financial statement given to them by appellant and as a result of this reliance suffer damage?

■ 1. Although respondents were former owners and may have observed appellant's business from a close proximity, the records were peculiarly within appellant's knowledge and the testimony of Noval Cantrell reflects that he did in fact rely on the written financial statement provided him by appellant. It would be unreasonable to charge respondents with knowledge of appellant's financial condition because respondents may have been able to observe appellant's inventory; this observation would not necessarily arm respondents with the other facets of appellant's business operation to allow them to know appellant's financial condition. Becoming concerned because of appellant's failure to make two payments, respondents quite naturally requested a written financial statement which they hoped would show them appellant's financial condition.

Appellant provided this statement and respondents relied thereon. There is no indication that respondents had special knowledge concerning appellant's financial situation and thus appellant's cases cited are not analogous to this type of situation.

Respondents' reliance on the written financial statement can reasonably be assumed from the circumstances of the case and it may likewise be established from the circumstances of the case that this reliance was a material reliance on the part of respondents. Superior Loan Corp. of Buffalo v. Robie, 476 S.W.2d 144 (Mo.App. 1972). They took no action at the time the financial statement was provided them in October to foreclose the chattel mortgage which appellant had previously executed to them, and it reasonably may be assumed that this foreclosure operated to respondents' detriment in that some two months or more elapsed thereafter prior to appellant's filing of bankruptcy. It is not unreasonable to assume that during this period of time respondents' security was depleted and he was thereby damaged by the subsequent sale of appellant's assets by the bankruptcy court. That appellant's financial statement was false may be inferred from the facts and circumstances of the case. Superior Loan Corp. of Buffalo v. Robie, supra, 476 S.W.2d at 148(3, 4). In October 1967, appellant, by this financial statement, showed his net worth to be $26,000 and some two months thereafter indicated that he was bankrupt by filing his petition in the bankruptcy court. This petition indicated appellant's liabilities to be $85,250 and his assets to be $25,000. It is difficult to believe that the financial statement given in October truly reflected appellant's financial condition at that time.

Giving due regard to the superior opportunity of the trial judge to weigh the credibility and characteristics of the witnesses who testified before him, there is ample circumstantial evidence in this case establishing that respondents proved the neces-

sary elements of fraud. Superior Loan Corp. of Buffalo v. Robie, supra.

2. The United States Court of Appeals, speaking in White v. Public Loan Corp., 247 F.2d 601, 602(1, 2) (8th Cir. 1957), effectively disposes of appellant's second contention on appeal that respondents were required to assert in the bankruptcy proceeding any reason that would preclude appellant from being discharged, and because of their failure to do so they are now estopped from bringing suit because of the alleged fraud on the part of appellant. The White case held an earlier case, In re Walton, 51 F.Supp. 857, 858(1, 2) (W.D.Mo.1943), to be erroneous and stated that the language of §§ 14 and 17 of the Bankruptcy Act, 11 U.S.C.A. §§ 32 and 35, did not require a creditor to assert in a bankruptcy proceeding that a particular bankrupt had fraudulently induced the debt that was the basis of the creditor's claim, and the fact that the creditor participated in the bankruptcy dividends would not thereafter preclude the creditor from suing the bankrupt upon proof that the debt was induced by the fraud of the bankrupt.

3. There is ample evidence adduced by respondents to prove the execution of the note and to establish that they have a right of action thereon. Respondent Norval Cantrell testified that the note in question was executed in his presence and the only disagreement as to the genuineness and execution of the note seems to be that the testimony of Norval Cantrell, indicating that he saw Marn and Nedra Cafourek sign the note, would be inadmissible hearsay with regard to Nedra Cafourek's execution due to the fact that she was not a party to the lawsuit, nor was she present in court. Appellant contends that respondents are alleging the wrongful act of two parties while seeking to prove it in court against only one of the parties and using the actions of the absent party to indict the present party for a tort which could only have been jointly committed. The execution of the note was not a

"wrongful act of the two parties"; the tortious act here was the obtaining of the extension of credit long after the execution of the note through the use of a materially false financial statement. Respondents are not relegated to suing under a tort related theory, but may bring their cause of action under a contract theory. The assertion of a tort liability claim against appellant is simply for the purpose of preventing discharge in bankruptcy. Thomas v. Crosby, 146 F.Supp. 296, 299(4) (W.D.Mo.1956).

Appellant further contends that respondents cannot maintain a cause of action on the note because they are not holders or holders in due course. There are two ways under the Uniform Commercial Code to convey rights on commercial paper: "Transfer (assignment) and negotiation." Section 400.3–201, RSMo 1969, V. A.M.S., provides:

"(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein . . . ."

Through this provision a transferee, notwithstanding the absence of proper endorsement, nevertheless acquires the rights of his transferor. There is no claim that the transferor herein, Delta Loan Company, had no right to collect from appellant. This being the case, respondents acquired through transfer the rights of Delta Loan as a holder in due course, among which is the right to collect.

We also feel that to require respondents to prove by strict accounting their investment in the note as espoused by appellant so that the respondents, transferees, could recover only their investment in the amount (that is the amount as discounted) and not the unpaid balance would result in general banking and business collapse, as indicated in respondents' brief. Appellant's third point is ruled against him.

4. Respondents' action to prevent appellant's discharge in bankruptcy by

alleging a tortious act does not prevent respondents from later suing on a contract theory and thereby securing a judgment against appellant. A more reasonable view in this matter is that the creditor has both contract and tort remedies under the present fact situation. Ohio Finance Co. v. Greathouse, Ohio App., 64 Ohio Law Abst. 1, 110 N.E.2d 805 (1947); Thomas v. Crosby, supra, 146 F.Supp. 296.

The facts in the Ohio Finance Co. case are analogous to this case. The Ohio plaintiff alleged a cause of action against the defendant on a promissory note and defendant pleaded discharge in his answer. Plaintiff averred non-dischargeability of the debt in his reply to the defendant's answer. Plaintiff founded his claim of non-dischargeability on the ground that credit was obtained by the defendant through the use of a materially false statement. Judgment was for the plaintiff and defendant appealed. The court in that case stated the issues as follows, 110 N.E.2d 1. c. 806–807:

"The following questions material to a decision on this appeal are:

"1. Did the discharge in bankruptcy relieve the defendant from liability on the note set up in plaintiff's Statement of Claim, the execution of the note by defendant being admitted, his discharge in bankruptcy having been shown, wherein he listed this debt and gave notice to the plaintiff, who made no objection to the discharge in the Bankruptcy Court?

"2. Did plaintiff misconceive its remedy and by filing its action on contract instead of tort, thereby preclude itself from pleading defendant's tort by way of reply to defendant's answer setting up the discharge in bankruptcy?

"3. Could plaintiff attack in the Municipal Court the bankruptcy discharge, or was it required to seek relief in the Bankruptcy Court to set aside such discharge on the ground of the alleged false pretenses and misrepresentations of defendant?

"We are of the opinion that the answers to all these questions are no longer debatable in view of the express provisions of the Bankruptcy Act and the several decisions of this court, in which we follow the great weight of authority throughout the United States. All these questions must be answered favorably to the plaintiff-appellee."

Specifically on the second issue raised— that is, whether plaintiff was precluded from pleading defendant's tort by filing a contract, instead of a tort action—the court held, 1. c. 807–808(5, 6):

"It will be kept in mind that defendant was charged with knowledge that this fraudulently incurred indebtedness was not dischargeable in bankruptcy. Certainly plaintiff in the Municipal Court was not required to anticipate that defendant would assert the defense of discharge of a non-dischargeable debt. Defendant having asserted such discharge, plaintiff need only deny the same in its Reply, which it did and alleged the reasons for such denial. Defendant cannot decide for plaintiff the nature of the cause of action. Nor can defendant change plaintiff's cause of action by alleging matters defensive thereto. Having attempted to avail himself of a discharge in bankruptcy, which was denied, it was incumbent upon defendant to prove an effective discharge, since he admitted the execution and delivery of the note. Defendant simply failed upon the proof of his alleged defense, although he may have established a prima facie defense by the introduction of his Certificate of Discharge together with evidence of this debt having been listed in his Schedule of Debts and that notice thereof was had by plaintiff. Such prima facie defense was effectively rebutted by the facts alleged in plaintiff's Reply and established upon the trial wherein no prejudicial error has intervened.

\* \* \* \* \* \*

"As supporting our conclusions herein we further cite and refer to: In re Menzin (In re Lewis Frank & Sons), 2 Cir., 238 F. 773. 1 Collier on Bankruptcy, 1607–1608, and cases cited. 6 Am.Jur., Section 502, p. 811, and following. Talcott v. Friend, 7 Cir., 179 F. 676, 43 L. R.A., N.S., 649; Friend v. Talcott, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718."

We feel the better rule is that the liability relied upon by respondents to prevent discharge is liability in tort, but the principal action against defendants was a contract. Personal Finance Co. v. Nichols, 71 R.I. 213, 43 A.2d 315 (1945). In the Personal Finance Co. case, the court held, l. c. 316(3):

" 'A debt created by fraud is not void but voidable only, and therefore a creditor may assert both the debt and the fraud at the same time, so long as he asserts the fraud to avoid not the debt but the discharge.' When the court there says 'at the same time' we are of the opinion that it means in the course of pleading in the same case."

The Federal District Court for the Western District of Missouri, in Thomas v. Crosby, supra, has indicated that a plaintiff creditor does not waive or abandon non-dischargeability of a debt by suing defendant originally on the note and taking judgment in contract. The question was whether plaintiff could assert fraud to prevent release by discharge. The court held, 146 F.Supp. l. c. 299(4):

"The last matter for decision is whether plaintiffs waived or abandoned the non-dischargeability of the liability by suing defendant originally on the note, and taking judgment in contract. An action of that character does not preclude the assertion that the money was obtained by false representations. The fraud may be pleaded to save the judgment from release by discharge. This is precisely what plaintiffs did. It cannot be said that plaintiffs waived the non-dischargeable character of the liability in their favor, because they failed to allege the fraud involved in the transaction. On the contrary, plaintiffs strenuously and specifically alleged facts which showed that the debt was created by false representations. Plaintiffs clearly preserved the fraud essential in protecting the liability from a bar of discharge in bankruptcy.

"The actual character of the liability, rather than the form of action, must control. Congress realized this when, by the 1903 amendment of the Bankruptcy Act, they substituted the word 'liabilities' for 'judgments in actions for fraud.' 30 Stat. 550. The amendment broadened the exception significantly by making non-dischargeability depend upon the character of the liability, instead of the form of action."

We hold appellant's fourth point against him and find that respondents' principal action is one in contract; however respondents may invoke appellant's tort liability for the purpose only of preventing discharge.

The judgment of the circuit court is hereby affirmed and all the issues raised by the appellant are decided against him for the reasons stated above.

STONE, Acting C. J., and BILLINGS, J., concur.

HOGAN, C. J., and TITUS, J., not participating.