CITIZEN'S ELECTRIC CORPORATION,
Plaintiff-Appellant,

v.

Robert W. AMBERGER et al.,
Defendants-Respondents.

Nos. 38765, 38773, 38774 and 38775.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Nov. 28, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 12, 1979.

Application to Transfer Denied
Feb. 13, 1979.

Hannegan & Knight, Claude C. Knight, St. Charles, for plaintiff-appellant.

Buerkle, Buerkle & Lowes, Albert C. Lowes, Jackson, for defendants-respondents.

STEWART, Presiding Judge.

Condemnation proceedings in which plaintiff, an electrical utility company, was awarded easements over numerous parcels of property in Perry County.

Exceptions of plaintiff and defendants Amberger, Huber, Hornberger and Moll were tried by the court. Plaintiff appeals from the judgments assessing damages with respect to the four parcels of these defendants. The appeals have been consolidated for our consideration. We reverse and remand.

By the proceedings plaintiff obtained easements 100 feet in width across the lands of various defendants. The petition provides that the perpetual easement is for the "purpose of erecting, constructing, reconstructing, keeping, operating, inspecting, patrolling and maintaining, a line or lines consisting of poles, towers, crossarms, wires, cables, transformers, anchors, guy wires and appurtenances . . . in order to transmit and distribute electric energy, or other power, together with the right . . to construct, reconstruct, erect, place, keep, operate, maintain, inspect, patrol, add to, change the type of construction of and relocate at will said transmission lines across, upon, through, over and under said easement or right of way and with the further right, permission and authority to trim, cut and remove, by any means whatsoever, from said premises or the premises of the defendants adjoining the premises sought to be condemned, any trees, overhanging branches or obstructions which may endanger the safety of or interfere with said transmission lines; and together with the right of ingress to and egress from the premises sought to be condemned on such premises or the premises of defendants adjoining the premises sought to be condemned at any and all times for the [purposes set out] . . . and the right of traveling over said premises sought to be condemned for the purpose of gaining ingress to and egress from the rights of way or easements owned by Plaintiff over lands adjacent to the ends thereof for the purpose of doing anything necessary or convenient for the enjoyment of the easement . .."

It is further provided that "Except for the area required for said transmission lines, and the rights Plaintiff needs and seeks to acquire as alleged, the balance of defendant's lands and said right of way or easement upon and across said real estate will not actually be appropriated by plaintiff but will remain for such use by defendants as will not endanger or interfere with or create a hazard or obstruction to said transmission lines and the right plaintiff needs and seeks to acquire as alleged, except that the said defendants shall not have the right to erect or construct any buildings or structures upon said right of way." Plaintiff further covenanted that it would not fence or enclose the right of way.

At the time of the trial the construction of the lines had been completed.

The determinative issues of these appeals are common to each parcel of property, the extent of the easements and the valuations differ. The basis of the value of the various properties before the taking is comparable sales. The sales used are common to the appraisal of plaintiff's expert witness and the expert witnesses called by the defendants.

The Amberger Tract is illustrative of the issues common to each of the cases before us. This tract has a total of 176 acres. The easement covers 7.42 acres. Plaintiff set 13 poles and one anchor on the easement. Mr. Amberger testified that the value of the farm before the taking was $120,000.00. After the taking it was worth $100,000.00 resulting in a loss of $20,000.00. In determining the depreciation he considered that he had to cut 150 trees. He used some of the timber for fencing and sold the remainder for $1,500.00. Other factors considered in the valuation were the unsightliness of the poles, the compaction of the soil by reason of the construction. It was difficult to use four row farm equipment because of the poles. He also made reference to fence damage. The transcript is not clear as to just what if any damage was sustained to his fences.

Mr. Hoehn, Mr. Kassel and Mr. Meyer were called as appraisers on behalf of Amberger. They placed the value of the farm before the appropriation at between $123,000.00 and $132,000.00 and that the property was reduced in value by $10,224.00 to $11,535.00.

They all testified that factors considered by them included the value of the land before and after taking, the value of the land taken, damages to the property such as fencing, compaction of the soil on the easement, the difficulty of operating farm machinery around the poles and consequent weed infestation, the inability to have the crops sprayed by aircraft, unsightliness of the poles and frequency of entries on the land.

Mr. Hoehn testified he reached his conclusion as follows:

| | |
|---|---|
| Damages for the taking 7.42 acres at $750 per acre | $ 5,565.00 |
| Damage to fencing at $2.00 per foot | 2,656.00 |
| Damage to remainder attributed to unsightliness, loss of income and frequency of entry | 2,112.00 |
| | $10,333.00 |

Mr. Kassel and Mr. Meyer determined the damages to the tract as follows:

| | Kassel | Meyer |
|---|---|---|
| Damages for taking at: | | |
| $725 per acre | $ 5,379.50 | |
| $700 per acre | | $ 5,194.00 |
| Damages to 1328 feet of fencing: | | |
| $2.25 per foot | 2,988.00 | |
| $2.00 per foot | | 2,656.00 |
| Loss of income for: | | |
| 7 years | 2,968.00 | |
| 5 years | | 2,374.00 |
| | $11,535.50 | $10,224.00 |

Plaintiff's expert witness opined that the damages to the Amberger farm was $2,600.00. He reached his conclusion by multiplying one-half the per acre value of the farm ($300.00) by the number of acres covered by the easement (7.42) and rounded out the figure.

The judgment of the court with respect to the Amberger Tract reads as follows:

"Tract 8, Robert W. Amberger Tract— The Court assessed damages in the total amount of $7998.40, which the Court arrives at on the following basis:

"There was taken 7.42 easement acres according to the evidence, and the Court believes that the damages to those acres, considered as a whole, amounts to $400.00 per acre or a total assessment of damages of $2,968.00; there was evidence adduced that there was damage to fencing involving 1328 feet, and the Court believes that $2.00 per foot is a fair figure for that, or total damages re fencing of $2656.00. The Court believes that there will be an income loss suffered by the landowner by reason of this for a period of five years, and the Court places a value of $2374.40 on said damage, and these total the aforementioned figure."

*Kamo Electric Cooperative, Inc. v. Baker,* 287 S.W.2d 858 (Mo.1956) contains a comprehensive discussion of the law that governs this case, and is the authority for all of the principles of law set out herein, unless otherwise indicated.

■ Preliminary to our discussion we review the applicable principles. Where, through condemnation, part of a tract of land is burdened with a perpetual easement the compensation (damages) to which the owner is entitled is "the difference, if any, between the fair and reasonable market value of the entire tract of land before and after the appropriation of the part," as of the time of the appropriation.

■ In assessing damages to the entire tract it is proper for the fact finder to take into consideration that the condemnor is going to erect transmission lines and that it has required the right to enter upon the right of way to operate, maintain and patrol the line. In considering these factors it must be presumed that the condemnor will fully exercise the rights acquired and that it will act in a proper and lawful manner.

As said in *Kamo* l. c. 862:

"When the electric transmission line had been constructed at the time of the trial the actual damage that was done by the condemner on the right of way during the construction of the transmission line may be shown as evidence of the extent of the burden cast upon the land *at the time of the appropriation,* provided that the acts were not tortious and the damage could have been reasonably anticipated."

■ The date of taking in the cases at bar was August 14, 1975. The case was

tried on November 17, 1976 after the construction had been completed. The trial court could consider the damages occasioned to the land by plaintiff in the lawful use of the right of way which it had acquired. These damages may be considered for the purpose of showing the extent of the burden upon defendant's entire tract at the time of appropriation. They may not be considered as separate items of damages in determining the amount of compensation due the defendant. *Kamo* at Page 863. In this case the court assessed loss of profits arising from the damages occasioned by compaction of the soil as a separate item of damages. In assessing loss of profits as a special item of damages the judgment is against the law.

■■■■ As noted above the court also assessed damages to defendant's fence as a special item in the sum of $2,656.00. It is clear from *Kamo* that if the fences were damaged and were not repaired the acts were tortious and the resulting damages are not cognizable in this action. The court misapplied the law with respect to this issue. We note in passing that the testimony of the owners with respect to damage to fences in each of the cases was too vague to permit a finding with respect to damages.[1] The testimony of the appraisers adds nothing to the testimony of the owners.[2] The judgment cannot stand.

Each of the cases involved in this appeal is tainted by the deficiencies noted above. It would only unduly lengthen this opinion to discuss each case individually, the judgments all contained the same elements of damage that requires reversal of the judgment with respect to the Amberger Tract.[3]

---

1. The following occurred in the testimony of Mr. Amberger:
   "Q. After they finished with construction did they leave the fences in good shape, or you got fence troubles?
   A. Well, they're not as good as they were.
   Q. You gonna have to do somethin' with 'em?
   A. I will, yes, sir."

2. [Defendant's attorney] "Q. And was the fence destroyed?
   A. [Mr. Hoehn] The fence is repaired now, as I saw it, there is some damage to it. There has been—there is evidence of some damage. What I base my opinion on, when a heavy construction crew comes in and puts a fence along a quarter mile of land sitting cold, bringing in the equipment, I think that we would all agree that that strip of fence needs some work, replaced, or whatever it would be.
   Q. Okay. But this whole shot of land down here is, is, the total easement goes across down by 1328 feet of fencing, is that correct, down on—Let me show you Plaintiff's exhibit No. 4. You are talking about a fence from the edge of his property all the way down a total of 1328 feet?
   A. No. This is the part that I considered here.
   Q. Okay. Just that one part, the part, I guess, to the most left side between—
   A. Well, there's other damages here, here and here.
   Q. I see.
   A. But this was the part that I considered."
   Mr. Kassel testified only to the cost of fencing. He did not testify that it had been damaged. Mr. Meyer testified, ". . . the 1300 plus feet of fencing that will have to be maintained and replaced and can be replaced and repaired from time to time should they be destroyed, or in all probability will be opened, that will come out at $2,656.00, . . ."

3. "Tract 9, Jesse Huber Tract—The Court assesses damages in the total amount of $4190.00, which the Court arrives at on the following basis:
   "There was taken 3.12 easement acres according to the evidence, and the Court believes that the damages to those acres, considered as a whole, amounts to $350.00 per acre or a total assessment of damages of $1092.00; there was evidence adduced that there was damage to fencing involving 1050 feet, and the Court believes that $2.00 per foot is a fair figure for that, or total damages re fencing of $2100.00. The Court believes that there will be an income loss suffered by the landowner by reason of this for a period of five years, and the Court places a value of $998.00 on said damage, and these total the aforementioned figure.
   "Tract 10, Theodore Hornberger Tract—The Court assesses damages in the total amount of $5154.50, which the Court arrives at on the following basis:
   "There was taken 6.35 easement acres according to the evidence, and the Court believes that the damages to those acres, considered as a whole, amounts to $350.00 per acre or a total assessment of damages of $2222.50; there was evidence adduced that there was damage to fencing involving 450 feet, and the Court believes that $2.00 per foot is a fair figure for that, or total damages re fencing of $900.00. The Court believes that there will be an income loss suffered by the landowner by reason of this for a period of five years, and the Court

For the reasons stated herein the judgments of the trial court in these cases are reversed and remanded for a new trial in accordance with the principles delineated in *Kamo*.

REINHARD and STEPHEN, JJ., concur.

places a value of $2032.00 on said damage, and these total the aforementioned figure.

"Tract 11, the Otto Moll Tract—The Court assesses damages in the total amount of $2930.10, which the Court arrives at on the following basis:

"There was taken 3.03 easement acres according to the evidence, and the Court believes that the damages to those acres, considered as a whole, amounts to $350.00 per acre or a total assessment of damages of $1060.50; there was evidence adduced that there was damage to fencing involving 450 feet, and the Court believes that $2.00 per foot is a fair figure for that, or total damages re fencing of $900.00.

The Court believes that there will be an income loss suffered by the landowner by reason of this for a period of five years, and the Court places a value of $969.60 on said damage and these total the aforementioned figure.

"The Court further finds that the total damages assessed with respect to each tract above was clearly based on the evidence, and the Court in the last analysis has measured that as the total damage for each tract. The Court finds from the evidence produced by the landowner, which its credits, that the total damages were significantly more than contended by the Citizens Electric, and that the damages are as respect to each tract as assessed above."