**CITY OF CAPE GIRARDEAU, Missouri, a Municipal Corporation, Plaintiff-Appellant,**

v.

**Patricia Benton ROBERTSON, Jack C. Robertson, et al., Defendants-Respondents.**

**No. 41724.**

Missouri Court of Appeals, Eastern District, Division Four.

March 10, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Application to Transfer Denied June 8, 1981.

---

Robert C. Fick, Cape Girardeau, for plaintiff-appellant.

Albert C. Lowes, Buerkle, Lowes & Beeson, Jackson, for Reece W. and Louise Sanders, Patricia Benton Robertson and Jack C. Robertson.

Michael L. Richey, Richey & Price, Cape Girardeau, for Western District of the Lutheran Church—Mo. Synod (Good Shepherd Lutheran Church).

A. M. Spradling III, Spradling & Spradling, Cape Girardeau, for William A. and Frieda Schumacher.

Joseph P. Fuchs, Deptster, Fuchs & Barkett, Sikeston, for Billy D. and Julia Hoffmeister.

SATZ, Judge.

In this case, the City of Cape Girardeau (City) appeals from the trial court's dismissal of the City's petition seeking an order of condemnation. We affirm.

The City filed a petition seeking an order of condemnation to obtain a "permanent construction easement" over parcels of land owned by the respondents (Landowners). According to the City's allegations, the easement over each parcel is necessary "for the widening, extending, altering and improvement" of Cape Rock Drive, and "[t]he purpose of said easement is to permit the ground adjacent to Cape Rock Drive right-of-way to be excavated or filled ... and graded and sloped ..., and for erosion protection." The City also alleged it had attempted to agree with the Landowners "as to the fair market thereof and the fair compensation to be paid and has been unable to so agree."

Apparently, the Landowners filed separate motions to dismiss the petition.[1] Among other arguments, the Landowners contended the City had failed to bargain or negotiate in good faith and, therefore, the court lacked jurisdiction to enter the requested order of condemnation. After an evidentiary hearing, the trial court granted the Landowners' motions and dismissed the City's petition. The court found that none of the City's offers contemplated " 'full' remuneration" for any reduction in the market value of the parcels of land due to the designated easement. The court concluded the City had failed to comply with the constitutional and statutory requisite to negotiate in good faith with the Landowners before initiating the condemnation proceeding. The City appeals from this order.

At the outset, we note the Landowners contend this appeal is premature. Apparently, along with their respective motions to dismiss, each Landowner requested an award of attorney's fees. The trial court did not explicitly rule on the requests for attorney's fees in dismissing the City's petition, and, from this failure, the Landowners reason the court did not dispose of the issue of attorney's fees. In addition, the court did not designate its order of dismissal as a final, appealable order under Rule 81.06. Because the issue of attorney's fees was not disposed of and because the trial court's order was not designated as a final order, defendants contend the order was not final and appealable and, thus, they argue, this appeal is premature. We disagree.

Contrary to the Landowners' contention, the trial court's order did dispose of the issue of attorney's fees. By dismissing the City's petition, the trial court effectively rid itself of its jurisdiction to act further in the cause. Thus, the court's order of dismissal not only disposed of the City's petition, but it also effectively disposed of all pending issues in the cause. *See Skatoff v. Alfend*, 411 S.W.2d 169, 173–174 (Mo.1967). This

---

1. In a supplemental transcript, the trial court refers to "joint motions" to dismiss. However, only the motion to dismiss of Billy and Julia Hoffmeister was made a part of the record on appeal.

method of disposing of the issue of attorney's fees and the resulting disposition of this issue may or may not have been correct. Those issues are not before us. The Landowners limit their complaint to the finality of the order, and the court's order of dismissal was final for purposes of appeal. *See Dillen v. Remley,* 327 S.W.2d 931, 933 (Mo.App.1959).

We now turn to the merits of the appeal. The City contends its evidence shows that it made an offer to each Landowner prior to the initiation of this condemnation action and also shows the Landowners either made no response to the offers or rejected them outright. The City also contends the record fails to show bad faith on the part of the City, but, on the contrary, the record shows the City's willingness to continue negotiations even after the condemnation petition was filed. Therefore, the City argues it met the jurisdictional prerequisite to condemnation proceedings of negotiating in good faith, and, citing the well-known standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), the City seeks reversal of the trial court's dismissal of its petition on the grounds that the court's findings and judgment are against the weight of the evidence and represent an erroneous application of the law.

■ In Missouri, as a prerequisite to an entry of an order of condemnation, the condemnor must plead and prove its inability to reach an agreement with the owner on the price to be paid for the condemned interest. *E. g., State ex rel. Weatherby Advertising Co., Inc. v. Conley,* 527 S.W.2d 334, 336 (Mo. banc 1975); *Bueche v. Kansas City,* 492 S.W.2d 835, 838–839 (Mo. banc 1973); Rules 86.01 et seq. This requires the condemnor to plead and prove a good faith offer and the subsequent rejection of that offer. *E. g., State ex rel. Weatherby Advertising Co., Inc. v. Conley, supra* at 336; *State ex rel. State Hwy. Comm'n v. Pinkley,* 474 S.W.2d 46, 48–49 (Mo.App.1971). In its petition, the City alleged it was taking a "permanent construction easement" over each parcel of land in issue. Thus, each Landowner would be entitled to the

difference, if any, between the fair market value of his parcel before and after the parcel was burdened with the perpetual easement. *Citizen's Electric Corp. v. Amberger,* 575 S.W.2d 796, 798 (Mo.App.1978). However, from the record, it is clear the City did not contemplate any remuneration for burdening the parcels in question with a perpetual easement.

■ Admittedly, the record does show the City made an offer to each Landowner and also shows these offers were either rejected or ignored. However, the record clearly shows the City was not offering to pay for a "permanent construction easement." The City's sole witness was its negotiator, the Assistant to the City Manager. Her understanding of the present taking was consistent throughout the negotiations and at the hearing and is best exemplified by the following exchanges on cross-examination:

"Q. All right. And did your people ever determine whether or not there was any damage as a result of this perpetual continual easement and take into consideration any damages for that?

A. No, sir.

Q. Did you have any qualified appraiser come out and determine what the damage, if any, would be for the perpetual easement that would be going on this period of time?

A. No, sir."

\* \* \* \* \* \*

"Q. Okay. How much did you allocate in there for the use of the City or the right of the City to come in in the future on the land.

A. None."

She insisted the City was "not taking their land" and the easement "doesn't change their property rights, their property lines." She acknowledged that permanent "means forever," that the City's permanent easement would limit the Landowners' use of their land and, also, acknowledged that, at times, the City would be "cutting back ... on to his property." Nonetheless, she still

insisted that proper compensation was limited to the cost of "re-seeding and replanting trees." Additional references to the record would show the same consistent pattern. The City, through its negotiator, simply failed to consider and to evaluate as an element of damage the possible loss which might have been caused by burdening the parcels in question with a permanent construction easement. Obviously, this differs significantly from an honest but incorrect evaluation of the effect of imposing the easement. In effect, the City's conduct is no different than the City making an offer for one parcel of land or an easement over it and then petitioning to condemn a different parcel or easement. The City made no effort to pay for the "permanent construction easement" defined in its condemnation petition and, therefore, its offers could not be "good faith" offers.

▮ In its reply brief, the City apparently counters that it did evaluate the possible losses caused by the easement. The City argues that it considered the benefits conferred by the street improvement and then determined these benefits met or exceeded any possible losses; and, therefore, its offers necessarily included any losses offset by benefits. This claim of error is not properly before us. "A claim of error first set forth in a reply brief does not present an issue for appellate review". *Application of Gilbert*, 563 S.W.2d 768, 771 (Mo. banc 1978); *Lytle v. Page*, 591 S.W.2d 421, 426 (Mo.App.1979). Furthermore, the record does not support the City's conclusions. Admittedly, to compute compensation for a taking by condemnation, special benefits conferred by the taking may be factored into the computations. *State ex rel. State Hwy. Comm'n of Vorhof-Duenke Co.*, 366 S.W.2d 329, 335 (Mo. banc 1963); *see State ex rel. State Hwy. Comm'n v. Cady*, 400 S.W.2d 481, 484 (Mo.App.1965). General benefits are not proper factors. *State ex rel. State Hwy. Comm'n v. Vorhof-Duenke Co., supra* at 335. The City's evidence concerning benefits is, at best, equivocal, and the City can draw no sensible inference from it. The City's witness did testify "the street . . . alone would increase the value of their property." However, she also stated that no one evaluated the parcels in question before and after the imposition of the easement, "[e]xcepting that I did, (she testified), in my own mind, determine that the property will be more valuable when it's done, whenever you've got a good street, than it is before, because I've lived both places." This falls far short of showing the City factored any benefits, either special or general, into a computation of the values of the parcels before and after the imposition of the easement in question. More important, the record does not even indicate the City isolated, evaluated and included specific benefits in their offers of compensation. On the contrary, as previously demonstrated, the record shows the City's offers failed to contemplate any compensation for the taking of the permanent easement in question.

▮ The City also contends the trial court misapplied the law in three instances. The City first argues the trial court improperly rejected evidence showing the City continued to negotiate with the Landowners after instituting this condemnation proceeding. This evidence, the City contends, was relevant to prove the City negotiated with the Landowners in good faith. The City cites no authority and presents no compelling logic to support this contention.

The determination of whether proffered evidence is relevant is, in the first instance, within the sound discretion of the trial court and the determination will be upheld on appeal absent a showing of abuse of discretion. *See Radloff v. Penny*, 225 S.W.2d 498, 503 (Mo.App.1949). We cannot find the court abused its discretion in this instance. As noted, the City was required to prove that it negotiated in good faith with the Landowners prior to instituting this suit in condemnation. *State ex rel. State Hwy. Comm'n v. Pinkley, supra* at 49. Evidence which shows the City continued to negotiate with the Landowners after instituting this action in condemnation would not necessarily be relevant to the issue of whether the City negotiated in good faith with the Landowners prior to filing its peti-

tion. Moreover, the City's offer of proof regarding this excluded evidence clearly indicates the negotiations occurring after the filing of this suit involved offers which again failed to contemplate the proper evaluation for the taking of the permanent easement. This evidence merely shows the subject of the negotiations remained unclear to the City even after it instituted this action in condemnation. The City's point is, therefore, without merit.

■ The City next complains about the meaning of the trial court's order. The City reads the order as requiring offers to be based on formal appraisals by independent appraisers in order to show the offers were made in good faith. Engrafting this additional requirement on the condemnation process, the City argues, was a misapplication of the law. *See State ex rel. Weatherby Advertising Co., Inc. v. Conley, supra* at 341.

Contrary to the City's conclusions, the trial court's order should not be read as the City urges. The pertinent part of the order reads:

> "The City contends that they have complied with this statute [§ 88.080 RSMo 1978] even though they admit that no appraisals have been made to determine if the market value of Landowners land would change . . . ."

This statement merely represents a finding by the trial court that the City did not determine or evaluate the possible reduction in the market value of the property in question prior to making its offers. In context, the term "no appraisal" merely connotes "no effort" on the part of the City to make this determination and evaluation. The court correctly concluded the City did not make this effort prior to making its offers.

■ The City also argues the trial court's order erroneously applied the law by requiring the City to consider future damages in arriving at its offers. The City directs our attention to the following language in the order:

> "[T]he City did not fully disclose to them that any reduction in the market value of

their land by reason of the encumbrances placed thereon were compensable items of damages nor did the offers contemplate 'full' remuneration for such injury, if any."

We disagree with the City's interpretation of this language. The statement quoted above reflects the proper measure of damages in determining the amount of compensation for the taking of a permanent easement. *Citizen's Electric Corp. v. Amberger, supra* at 798. The order cannot be read sensibly as requiring the City's offers to include compensation for any improper future damages.

■ In addition, the City complains the Landowners posed questions at the hearing concerning future damages and questions concerning formal appraisals of the property sought to be condemned. The City did not object to these questions at the hearing and, thus, the propriety of the questions was not preserved for our review. Rule 84.13. Moreover, while, at times, the damages under inquiry may have been labeled "future damages," nevertheless, the questions being posed properly concerned compensation for diminution in value caused by the permanent easement in question. This point is, therefore, without merit.

■ Finally, the Landowners invoke Rule 84.19 and request us to assess damages against the City for filing a frivolous appeal. We decline to do so.

A frivolous appeal is generally defined as one which presents no justiciable question and is so readily recognized as devoid of merit on the face of the record that there is little prospect the appeal can succeed. *State ex rel. State Hwy. Comm'n v. Sheets,* 483 S.W.2d 783, 785 (Mo.App.1972). On the present record, we are unable to find the issues raised by the City are so lacking in merit that the appeal is frivolous. Indeed, the issue regarding what constitutes good faith negotiations has never been decided by our courts in the exact posture in which it is presently raised. *See Universal C. I. T. Credit Corp. v. State Farm Mutual Auto*

*Ins. Co.,* 493 S.W.2d 385, 390 (Mo.App.1973). Consequently, we deny the Landowners' request for damages.

Judgment affirmed.

SMITH, P. J., and SIMON, J., concur.