FRANK, Judge.
The instant, factually awkward matter is resolved through the application of simple principles. Anthony’s Restaurants owned and operated several eating establishments in Sarasota County. As part of an expansion plan, Anthony’s borrowed $35,000.00 in August of 1983 from Barnett Bank as operating capital for a new location. On August 11, 1983, Anthony’s executed a security agreement in favor of the Barnett Bank collateralizing all then owned and after-acquired property. On August 15, 1983, Barnett Bank filed a UCC-1 with the Secretary of State which included a statement disclosing the bank’s security interest in .the property owned or subsequently acquired by Anthony’s.
On September 12, 1983, Anthony’s purchased several items of equipment from the Ice House for use in its new restaurant. After initial payments to the Ice House, Anthony’s principals realized they could not continue paying for the equipment. At this juncture, Anthony’s appears to have been indebted to the Ice House in the amount of approximately $10,000 for the equipment and some $12,000.00 for supplies. Anthony’s, pursuant to a suggestion from the Ice House, sought financial assistance from Hayes. Anthony’s representative told Hayes’ agent that Anthony’s was indebted to the Ice House for the equipment. Hayes, knowing that Anthony’s had received the equipment from the Ice House and that a balance remained unpaid, paid the Ice House an amount exceeding $26,-000.00. On October 19, 1983, Hayes Leasing and Anthony’s executed a lease agreement in which the equipment Anthony’s had procured from the Ice House was purportedly leased from Hayes. Hayes never acquired possession of the equipment but it did file a UCC-1 with the Secretary of State on December 13, 1983, to which a document was appended identifying the Ice House as the supplier of the equipment.
In July of 1984, Anthony’s defaulted on the repayment of its loan from Barnett Bank. Shortly thereafter, Anthony’s also defaulted in its obligations to Hayes. Following Anthony’s default, Hayes picked up the equipment from the premises where Anthony’s had maintained its restaurant. In September of 1984, after learning that Hayes had possession of the equipment, Barnett Bank filed an action against Hayes. Barnett Bank claimed that the after-acquired property clause contained in the security agreement executed by Anthony’s on August 11, and embodied in its UCC-1, endowed it with a superior right to the equipment; hence Hayes' possession of the equipment was a technical conversion.
Hayes responded to the action by filing a third party complaint against the Ice House alleging that the Ice House had breached the warranty of title when it “sold” the equipment to Hayes. Thus, the central *1075 issue before us is whether there was a sale of the equipment to Hayes which resulted in the Ice House warranting title to the equipment pursuant to section 672.312, Florida Statutes (1985).[1]
The trial court’s finding that there was no sale from the Ice House to Hayes is supported by competent substantial evidence. There was no transfer of title to Hayes which the Ice House could have impliedly warranted. We affirm the trial court’s rejection of the claims asserted in Hayes’ third party complaint.
The record supports the trial court’s determination, consistent with section 672.-401(2), Florida Statutes (1985), that title to the equipment passed from the Ice House to Anthony’s in September of 1983. That statute provides as follows:
Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest....
The record does not contain any documentation either equivalent to or in the nature of a contract between Hayes and the Ice House encompassing either a sale or a transfer of title in the equipment to Hayes.[2] Indeed, the president of Ice House testified that Anthony’s had deposited money for the equipment, that payments were made by Anthony’s following delivery of the equipment and that “it was being sold to Anthony’s.” In any event, it is plain from the foregoing statutory provision that title to the equipment vested in Anthony’s when it acquired possession of it in September of 1983.
Hayes’ main contentions are that it became the owner of the equipment because of the subjective belief of its president that Hayes had purchased the equipment and the fact that it had paid Anthony’s indebtedness to the Ice House. Neither consideration will sustain Hayes’ claim. The equipment at all times after it left control of the Ice House was in Anthony’s possession and Hayes knew that Anthony’s was acting in a manner consistent with ownership.
Based upon the foregoing, we find no error in the trial court’s disposition of this matter.
Affirmed.
SCHEB, A.C.J., and RYDER, J., concur.

. Although it is not a disputed aspect of the present proceeding, but to insure a complete backdrop for the result we reach, we note that the trial court correctly determined that Barnett Bank’s preexisting security interest in Anthony’s subsequently acquired property was paramount to any competing interest Hayes could have asserted. Section 679.312(5)(a), Florida Statutes (1985), provides in pertinent part, that:
Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

. Section 672.312, Florida Statutes (1985), by its terms, predicates warranty of title, and hence an action for its breach, upon the existence of a contract between the vendor and the vendee. The absence of a sales contract between the Ice House and Hayes appears to be a sufficient basis for disposing of Hayes’ third party complaint. We do not, however, rest our determination upon that ground for the reason that the record, as we have found, adequately discloses that the Ice House was divested of a warranta-ble title to the equipment when delivery to Anthony's was accomplished.