**FIRST STATE BANK & TRUST COMPANY OF SHAWNEE,**
Appellee,

v.

**WHOLESALE ENTERPRISES, INC.,**
**Appellant/Third–Party Plaintiff,**

v.

**Jim HAZELWOOD and Lone Star Bank,**
**Third–Party Defendants.**

No. 80633.

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 13, 1994.

Scott G. Robelen, Oklahoma City, for appellant.

James D. Berry, Jr., Meeker, for appellee.

## MEMORANDUM OPINION

JONES, Judge:

■ We consider here whether a warranty of title implied by 12A O.S.1991 § 2–312 from the seller to the buyer of an automobile extends to the bank which financed buyer's purchase. We hold it does not, and so reverse the trial court's judgment in favor of the bank.

We recount first the somewhat tortuous history of the vehicle in question, a 1980 Chevrolet Corvette: Someone stole the Corvette in Texas from its original owner, Taylor, and later a title was issued there stating the car was a reconditioned vehicle (i.e., one with parts from other vehicles). In 1988, a Texas bank repossessed the car from a subsequent purchaser, and sold it to Hazelwood (a third-party defendant in the trial court). Hazelwood somehow obtained an original vehicle title for the Corvette in Oklahoma, and then traded it to Appellant Wholesale Enterprises, Inc. ["Wholesale Enterprises"] as partial consideration for his purchase of another car. In October, 1990, Wholesale Enterprises sold the Corvette to another individual, Gary Brown. Brown financed his purchase through Appellee First State Bank & Trust Company of Shawnee ["First State Bank"], granting First State Bank a security interest to secure his loan. Brown subsequently defaulted on the loan, and First State Bank repossessed the car. Meanwhile, Brown filed bankruptcy, and was relieved of any further obligation on his car loan.

Shortly after repossessing the car, First State Bank tried to resell it through a local auto auction. Employees of the auction house apparently noticed the car had an original vehicle title yet also had identifiable parts derived from other vehicles. Because of this discrepancy between the title to and the content of the car, the State of Oklahoma filed notice of forfeiture in August, 1991, under 21 O.S.1991 § 1738(A).[1] First State Bank received actual notice of the forfeiture proceedings but failed to answer or defend. At the State's request, the court in the forfeiture proceeding entered a consent judgment in favor of the original owner's insurance company.

Then, in September, 1991, First State Bank sued Wholesale Enterprises for breach of warranty of title. Wholesale Enterprises filed a motion for summary judgment, in which it denied selling the vehicle to, or having any contact with, First State Bank when Brown bought the car. First State Bank responded by cross-motion for summary judgment, arguing that it had "standing" to assert a claim for breach of warranty of title because it held a security interest in the vehicle and also under the doctrine of equitable subrogation. The trial court granted summary judgment for First State Bank. Wholesale Enterprises filed a motion to reconsider, asserting both the impropriety of granting summary judgment for First State Bank and a right to judgment over against third-party defendants. The trial court denied the motion to reconsider, stating that First State Bank could enforce the warranty of title as between Wholesale Enterprises and Brown because First State Bank "[stood] in Brown's shoes ... by virtue of its security interest." [Rec. 184–85.] This appeal followed.

We review the trial court's ruling on summary judgment *de novo*.[2] We examine the pleadings and the evidentiary materials in

---

1. "Any commissioned peace officer of this state is authorized to seize ... any vehicle ... whose numbers have been removed, altered or obliterated so as to prevent determination of the identity or ownership of said property ..."

2. This standard of review is not altered here by filing of a motion to reconsider. Because Wholesale Enterprises's motion was filed within ten days after the trial court judgment, it may be considered as a motion for new trial, upon denial of which the appellant may obtain full review of the adverse judgment. *Schepp v. Hess*, 770 P.2d 34, 36 n. 2 (Okla.1989).

the summary judgment record to determine whether there is a substantial controversy in the material facts or if the uncontroverted facts support a legitimate inference favoring the well-pleaded theory of the party against whom judgment was granted. *Runyon v. Reid,* 510 P.2d 943, 946 (Okla.1973); *Crisp, Courtemanche, Meador & Assoc. v. Medler,* 663 P.2d 388, 389 (Okla.Ct.App.1983). We view the facts in the light most favorable to the non-moving party, *Hargrave v. Canadian Valley Elec. Co-op., Inc.,* 792 P.2d 50, 55 (Okla.1990), and even if the material facts stand uncontroverted, we must reverse a summary judgment if reasonable persons could find in favor of the non-moving party from those facts. *Weaver v. Pryor Jeffersonian,* 569 P.2d 967, 973 (Okla.1977).

Unless excluded or modified, the law implies in every contract for sale of goods "a warranty by the seller that ... the title conveyed shall be good, and its transfer rightful." 12A O.S.1991 § 2–312(1). A merchant[3] who regularly deals in the kind of goods also warrants delivery of the goods free from any claim by a third person by way of infringement or the like. *Id.,* § 2–312(3). A "sale" consists of the passing of title from seller to buyer for a price. 12A O.S.1991 § 2–106(1). A "contract for sale" includes both a present sale of goods and an agreement to sell goods in the future. *Id.*

■ Clearly, there was no "sale" or "contract for sale" between Wholesale Enterprises and First State Bank. First State Bank did not pay or agree to pay Wholesale Enterprises in exchange for title to the vehicle. The bank's dealings were entirely with its customer, Brown. Only after Brown defaulted on his car loan did the bank acquire the vehicle, and only then by exercise of the security interest it had been granted by Brown, and not through any bargain with Wholesale Enterprises. *Cf., Hayes Leasing Systems, Inc. v. Ice House, Inc.,* 506 So.2d 1073, 1075 (Fla.Ct.App.1987) (third-party's payment of balance due on buyer's purchase of equipment did not constitute a "sale" to third-party for purposes of implied warranty of title).

■ The greater weight of authority holds that a warranty of title under the Uniform Commercial Code does not run with the goods and thus does not protect anyone except the immediate purchaser of the goods. *Crook Motor Co. v. Goolsby,* 703 F.Supp. 511, 520 (N.D.Miss.1988); citing *Universal C.I.T. Credit Corp. v. State Farm Mutual Auto. Ins. Co.,* 493 S.W.2d 385 (Mo.Ct.App.1973); *Hertz Corp. v. Hardy,* 197 Pa.Super. 466, 178 A.2d 833 (1962). The warranty was not extended to First State Bank merely because Brown granted the bank a security interest when he borrowed the money to buy the car. A security interest is merely an interest in property which secures payment or performance of an obligation. 12A O.S.1991 § 1–201(37)(a). It would be anomalous, indeed, if the grant of such a limited interest in property also granted the right to enforce a warranty of title, when by law such a warranty only accompanies an agreed exchange of title for a price.

■ We also reject First State Bank's argument that, once it repossessed the car, it could then assert the warranty of title by subrogation. The bank has cited no authority to support its argument, and our research has disclosed none. Assignments of error presented by counsel in a brief which are entirely unsupported by any authority will not be noticed by the court, unless it is apparent, without further research, that they are well taken. *Casualty Reciprocal Exchange v. Waggoner Drilling Company,* 340 P.2d 490 (Okla.1959). The argument is not well taken without further research, as is discussed below.

■ Subrogation is a creature of equity. *Republic Underwriters Insurance Co. v. Fire Insurance Exchange,* 655 P.2d 544, 547 (Okla.1982). Yet, equity cannot be invoked to change rights defined and established by law, or to create a right where none exists. *In re Estate of Redwine,* 445 P.2d 275, 278 (Okla.1968); *Welch v. Montgomery,* 201 Okla.

---

**3.** A "merchant" is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having, or who by attribution is deemed to have, knowledge or skill peculiar to the practices or goods involved in the transaction. 12A O.S.1991 § 2–104(1).

289, 205 P.2d 288, 291 (1949). By invoking the aid of equity, First State Bank seeks to extend the protection of the warranty of title to any party holding a security interest in the goods. In our view, Appellee asks to much of equity to permit it to enforce a warranty which by law is enforceable only between buyer and seller.

First State Bank relies in large part upon the case of *Mercer v. Braziel,* 746 P.2d 702 (Okla.App.1987), which, oddly enough, also involved a stolen Corvette. But *Mercer,* to the extent that it decided questions on the warranty of title, involved only the rights between Braziel as seller and Moran as buyer. Nothing said in *Mercer* supports extension of the UCC warranty of title beyond the immediate purchaser of the goods.

We therefore conclude that trial court judgment in favor of First State Bank must be and is hereby reversed.

REVERSED.

HANSEN, P.J., and GARRETT, V.C.J., concur.